## TWENTY-FIRST JUDICIAL CIRCUIT COURT
## ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Eric Westerfield,<br><br>    Plaintiff,<br><br>v.<br><br>Government Employees Insurance Company,<br>GEICO General Insurance Company,<br>GEICO Indemnity Company,<br>GEICO Casualty Company,<br>GEICO Choice Insurance Company,<br>GEICO Secure Insurance Company,<br>GEICO Advantage Insurance Company, and<br>GEICO Marine Insurance Company,<br><br>    Defendants. | Case No.<br><br>**Serve All Defendants at:**<br>C T CORPORATION SYSTEM<br>5661 Telegraph Rd Ste 4B<br>Saint Louis, MO 63129-4275 |

# Petition

Plaintiff, Eric Westerfield ("Plaintiff"), individually and for all others similarly situated individuals, files this Petition against Government Employees Insurance Company ("Government Employees"), GEICO General Insurance Company ("GEICO General"), GEICO Indemnity Company ("GEICO Indemnity"), GEICO Casualty Company ("GEICO Casualty"), GEICO Choice Insurance Company ("GEICO Choice"), GEICO Secure Insurance Company ("GEICO Secure"), GEICO Advantage Insurance Company ("GEICO Advantage"), and GEICO Marine Insurance Company ("GEICO Marine") (collectively, "GEICO"):

1

## Nature of the Action

1. This class action challenges a practice no reasonable insured would accept: GEICO added a stranger to Plaintiff's policy based on unverified third-party data—and then treated silence as consent. No verification. No permission. Just an inflated premium for fabricated risk. To systematize this misconduct, GEICO uses a "SCAM"—a Silence-Constructed Addition Mechanism—through which GEICO unilaterally adds unrequested "drivers" and charges higher premiums unless the insured notices it and takes action to stop it.

2. GEICO policies permit premium adjustments only when information is "incorrect, incomplete or changed." *See*, *e.g.*, Exhibits 1–8 ("Policy" or "Policies"). No GEICO policy, including the Policies, allows GEICO to make up facts, inflate risk, or manufacture consent through silence. Nor do they authorize the addition of unrequested individuals in direct conflict with the Policies' "Persons Insured" clause, which requires express or implied permission for someone to be a covered driver.

3. The SCAM breaches the contract. It violates the covenant of good faith and fair dealing. It unjustly enriches GEICO.

4. Under the SCAM, GEICO obtains unverified information from third-party sources, treats that information as presumptively true, issues an automated 15-day negative option, and then unilaterally adds unrequested drivers if the insured does not respond in time. This results in unauthorized premium increases and coverage distortions across thousands of policies.

5. This lawsuit seeks recovery for all victims of the SCAM and related unfair and deceptive practices.

6. Plaintiff brings this action individually and for all similarly situated insureds whose premiums were increased because GEICO added unrequested individuals to their policies through the SCAM.

## Jurisdiction and Venue

7. This is a civil action, so this Court has jurisdiction.

8. Venue is proper in this Court because all defendants are foreign insurance companies deemed to reside in, and a resident of, St. Louis County, Missouri, which is where their registered office is maintained.

## The Parties

9. Plaintiff is a citizen of Missouri, and, at all relevant times, was a named insured under one or more automobile insurance policies issued by one or more GEICO-branded underwriting companies. Plaintiff purchased private-passenger automobile insurance for personal, family, or household use.

### *Government Employees*

10. Government Employees is a Nebraska corporation with its principal office located at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701, according to Missouri Secretary of State records.

11. Government Employees is the lead company of the GEICO insurance enterprise and is one of Berkshire Hathaway's three principal insurance underwriting groups. Government Employees controls, oversees, and directs most or all GEICO-branded underwriting companies, including form filings, rating, claims handling, driver-matching practices, and policy-administration systems.

*12*. Government Employees' principal business is the sale of private-passenger automobile insurance nationwide, including in Missouri. Berkshire Hathaway states that the GEICO-branded underwriting companies collectively sell private-passenger auto insurance to individuals in all 50 states and the District of Columbia.

### *GEICO-Branded Underwriting Companies*
### *(Operating as a Unified Enterprise)*

13. **GEICO General** is a Nebraska corporation with its principal office located at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. GEICO General is a major GEICO underwriting company within the GEICO enterprise. GEICO General is authorized to write, and actively writes, private-passenger automobile insurance in Missouri and elsewhere, using GEICO's centralized policy forms and systems.

14. **GEICO Indemnity** is a Nebraska corporation with its principal office located at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. GEICO Indemnity is a major GEICO underwriting company within the GEICO enterprise. GEICO Indemnity is authorized to write, and actively writes, private-passenger automobile insurance in Missouri and elsewhere, using GEICO's centralized policy forms and systems.

15. **GEICO Casualty** is a Nebraska corporation with its principal office located at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. GEICO Casualty is a major GEICO underwriting company within the GEICO enterprise. GEICO Casualty is authorized to write, and actively writes, private-passenger automobile insurance in Missouri and elsewhere, using GEICO's centralized policy forms and systems.

16. **GEICO Choice** is a Nebraska corporation with its principal office at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. GEICO Choice is a major GEICO underwriting company within the GEICO enterprise. GEICO Choice is authorized to write, and actively writes, private-passenger automobile insurance in Missouri and elsewhere, using GEICO's centralized policy forms and systems.

17. **GEICO Advantage** is a Nebraska corporation with its principal office at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. GEICO Advantage is a major GEICO underwriting company within the GEICO enterprise. GEICO Advantage is authorized to write, and actively writes, private-passenger automobile insurance in Missouri and elsewhere, using GEICO's centralized policy forms and systems.

18. **GEICO Secure** is a Nebraska corporation with its principal office at 5260 Western Avenue, Chevy Chase, Maryland 20815-3701. GEICO Secure is a major GEICO underwriting company within the GEICO enterprise. GEICO Secure is authorized to write, and actively writes, private-passenger automobile insurance in Missouri and elsewhere, using GEICO's centralized policy forms and systems.

19. **GEICO Marine** is a Nebraska corporation with its principal office at 1440 Kiewit Plaza, Omaha, NE 68131. GEICO Marine is a major GEICO underwriting company within the GEICO enterprise. GEICO Marine primarily writes marine risks nationwide but is authorized to write, and actively writes, private-passenger automobile insurance in Missouri and elsewhere, using GEICO's centralized policy forms and systems.

### *Enterprise-Unity and Common-Systems*

20. All GEICO entities have unified headquarters oversight and corporate control.

21. GEICO's enterprise unity is confirmed by Berkshire Hathaway Inc.'s 10-K, which states GEICO operates through Government Employees and several other insurance entities as part of a single reporting segment.

22. GEICO-branded underwriting companies use centralized systems for these, among others:

    a. household-driver matching and driver-data acquisition;

    b. LexisNexis and third-party consumer-reporting inquiries;

    c. underwriting rules, policy issuance, and rating;

    d. claims handling; and

    e. direct-response marketing and online policy administration.

23. These unified systems and practices result in identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data.

### *Organizational Structure*

24. GEICO is one of Berkshire Hathaway's three major insurance underwriting groups.

25. GEICO operates through Government Employees and "several other insurance entities," which are the GEICO-branded underwriting companies described above.

26. GEICO's principal business—and the principal business of each GEICO-branded underwriting company—is the sale of private-passenger automobile insurance in all 50 states and the District of Columbia, including Missouri.

27. GEICO's marketing, underwriting, driver-data collection, and claims administration are conducted through unified nationwide systems, giving rise to consistent practices across all GEICO-branded underwriting companies.

28. GEICO's organizational structure is depicted below:



## Factual Allegations

29.     Plaintiff was a named insured under one or more automobile insurance policies issued by one or more GEICO-branded underwriting companies.

30.     While Plaintiff was insured by one or more GEICO-branded underwriting companies, GEICO purportedly sent an email and/or letter speculating someone not listed on the policy as a named insured or additional driver "*may* be a licensed or permitted driver with your address listed as their primary address." *See, e.g.*, **Exhibits 9 and 10** ("SCAM Threat").[1]

31.     GEICO did no more work to vet the phantom driver identified in the SCAM Threat. Instead, it added a stranger to Plaintiff's policy because no one responded to GEICO within 15 days of it being sent.

---

[1] "SCAM Threat" refers to any record or communication stating that GEICO will automatically add a driver to the policy—based on unverified third-party information—unless the insured acts within a fixed number of days. It includes, without limitation, communications like Exhibits 9 and 10. No GEICO policy, including the Policies, mentions SCAM Threats or authorizes GEICO to use them.

6

32. Plaintiff did not (and does not) know the driver identified in the SCAM Threat, and no one by that name resides with Plaintiff.

33. The SCAM Threat informed Plaintiff that the phantom driver would be added to the policy automatically within fifteen days if no action were taken.

34. Although the SCAM Threat says GEICO relied on "information obtained from a consumer reporting agency," GEICO did not provide the underlying data, did not identify the consumer reporting agency used, and did not disclose the basis for the apparent address match. GEICO did not explain how it concluded that these individuals were associated with Plaintiff's household, nor did it disclose the reliability, limitations, or known inaccuracy rates of the data it relied upon.

35. Subsequently, GEICO informed Plaintiff the phantom driver was added to the policy as a covered driver "per your request" despite Plaintiff never requesting the driver be added. *See* Ex. 10.

36. This resulted in an increase to the policy premium, which was paid at a wrongly inflated amount.

37. Upon information and belief, GEICO conducted no investigation whatsoever to determine whether the individuals it added actually resided in Plaintiff's household, had any connection to the insured vehicles, and/or were insured elsewhere.

38. Upon information and belief, GEICO's process for disputing these additions was not as simple as Exhibits 9–10 implied. GEICO routinely refused to remove individuals based solely on the insured's truthful statement that the person did not reside in the household and/or was insured elsewhere. GEICO instead required documentation or third-party verification—requirements not disclosed in Exhibits 9–10, not required by the Policy, and often difficult or impossible for insureds to obtain—making it difficult or impossible for insureds to disprove GEICO's unverified assumptions.

39. Upon information and belief, GEICO did not verify residency, did not contact the individuals, and did not compare its data to any other source.

40. Upon information and belief, although GEICO says that it used information from a consumer reporting agency, GEICO relied exclusively on unverified third-party commercial address-matching databases and performed no independent verification of any kind. The

Electronically Filed - St Louis County - December 09, 2025 - 09:42 AM

underlying information was not provided to insureds and could not be accessed, reviewed, or meaningfully challenged.

41. Nothing in the Policies authorize GEICO to add unrequested drivers—and certainly not to add drivers based solely on unverified address-matching information from a third-party source or to treat an insured's silence as consent. The Policies are silent on any 15-day email warning procedure or SCAM Threat, and no such mechanism appears anywhere in any GEICO policy, including the Policies. Where the Policies speak, they contradict GEICO's conduct: the "Persons Insured" clause limits coverage to individuals using the vehicle with the insured's express or implied permission, which excludes strangers whose residency was never verified.

42. GEICO's invocation of the Policies' "duty to cooperate" does not permit the presumption that unverified data is correct. The duty to cooperate requires mutual communication, not unilateral acceptance of fabricated information. The Policies provide no consequence—let alone authorization for premium increases or driver additions—based on an alleged failure to cooperate.

43. If Plaintiff and the Classes (defined below) failed to cooperate (they didn't), GEICO's only potential options were to cancel or not to renew the policy. Even then, GEICO owed 45 days prior written notice "mailed by United States Post Office certificate of mailing," instead of the 15-day SCAM Threat GEICO used before it unilaterally hiked Plaintiff's and the Classes' insurance premiums. But what GEICO cannot do under its policies, including the Policies, is create new household risk assumptions, fabricate drivers, and charge the insured more money based on silence. That consequence isn't in the GEICO policies, including the Policies.

44. The Policies specify mailed notice sent through the U.S. Postal Service for adverse actions, including cancellation or non-renewal, and requires 45 days' advance notice. GEICO circumvented this safeguard by issuing only a 15-day SCAM Threat—a process that appears nowhere in the Policies and contradicts its express mailing requirements.

45. General insurance law requires insurers to base premiums on accurate and verified information and prohibits charging for risks that do not actually exist. By adding unrequested drivers as "rated drivers," GEICO charged Plaintiff and the Classes inflated premiums for nonexistent risks and for persons who posed no underwriting exposure under GEICO policies, including the Policies.

46. Upon information and belief, GEICO did not confirm whether the individuals identified in the SCAM Threat had any connection to Plaintiff's household or vehicles, whether they were insured elsewhere, or whether they posed any actual underwriting risk. GEICO increased premiums based solely on the unverified assumption that these individuals resided in Plaintiff's home, without investigating or attempting to determine whether that assumption was correct.

47. GEICO issued Plaintiff and the putative class members substantially similar insurance policies.

48. The policies issued by GEICO to Plaintiff and all putative class members are virtually identical in all material aspects. The terms in the policies relevant here are applicable and like the terms applicable to Plaintiff and all putative class members.

49. Like Plaintiff, the putative class members were insureds on a GEICO automobile insurance policy and had drivers added to their policies without the policyholders taking any action.

50. Plaintiff and the putative class members were improperly charged more than they owed due to GEICO's addition of unrequested drivers to their insurance policies.

51. Class members continued to make payments on their policies despite being charged an improperly inflated amount.

52. Upon information and belief, GEICO has retained the full payment amounts.

53. GEICO raised Plaintiff's and the Classes' insurance premiums to increase its profits while offering them no additional benefits.

54. Plaintiff and the Classes reasonably expected only individuals they authorized—or who at least lived in their home, drove the vehicle, and were not insured elsewhere—would be listed on their insurance policies.

55. GEICO's actions thwarted Plaintiff's and the Classes' reasonable expectation that their premiums would only be increased for actual changes to verified information—not speculative data misinterpreted or misapplied behind the scenes. GEICO's actions disappointed the reasonable expectations of Plaintiff and the Classes and constituted a conscious and deliberate attempt to profit from information it knew might be false.

56. Because Missouri and all other states require continuous auto insurance coverage, Plaintiff and the putative class members had no practical choice but to pay the inflated premium

to avoid suspension of their driver's license and vehicle registration and substantial reinstatement fees. These payments were therefore not voluntary in any meaningful legal sense.

57. GEICO used a substantially same automated negative-option SCAM process for all putative class members, relying on substantially same third-party data sources, substantially same unverified matching logic, and substantially undisclosed documentation requirements when insureds attempted to dispute the additions.[2]

### SCAM Threats

58. The SCAM Threats at the center of this case are sent by "GEICO Underwriting," not by any one GEICO-branded underwriting company. The SCAM Threats do not identify a particular underwriting company as the sender. Instead, GEICO uses a centralized underwriting department to issue its SCAM Threats on behalf of all GEICO-branded underwriting companies.

59. The SCAM Threats display multiple GEICO underwriting companies simultaneously on the same letterhead—including Government Employees, GEICO General, and GEICO Indemnity—confirming that GEICO uses shared templates, shared systems, and shared administrative platforms for all GEICO-branded insurance companies. This is so even when the private-passenger automobile insurance is written by a GEICO entity different from Government Employees, GEICO General, or GEICO Indemnity.

60. The SCAM Threats also use GEICO's centralized processing addresses, including One GEICO Center, Macon, Georgia 31295 and One GEICO Plaza, Washington, D.C. 20076, which GEICO uses for all GEICO-branded underwriting companies. This demonstrates common administrative operations, common mail-processing centers, and enterprise-wide systems.

61. GEICO's email version of the SCAM Threat likewise identifies the sender simply as "GEICO Underwriting" and confirms that "Auto coverage is underwritten by Government Employees Insurance Company," reinforcing that GEICO markets, communicates, and administers policies as a unified enterprise, not as distinct companies with independent systems.

62. The SCAM Threats inform consumers that unless they respond within 15 days, GEICO Underwriting will automatically add the purported driver to the policy and increase the

---

[2] Automatic "negative option" practices—where consumers are penalized unless they affirmatively opt out—are inherently suspect and violate state and federal laws and regulations.

premium. GEICO uses this uniform 15-day automatic-addition process across all GEICO-branded underwriting companies, confirming a centralized system that operates at the enterprise level.

63. The SCAM Threats reflect and confirm enterprise unity, common ownership, shared systems, common underwriting processes, and uniform business practices across GEICO.

64. Each GEICO entity sends or participates in the sending of these SCAM Threats through GEICO's centralized underwriting systems, and each GEICO entity increases premiums through the same shared SCAM workflow.

65. The SCAM Threats are opaque, manipulative, and profit driven.

66. The GEICO entities, after a meeting of the minds, had an unlawful objective and committed wrongful acts in furtherance of a conspiracy that damaged Plaintiff and the Missouri Conspiracy Class (defined below).

67. The GEICO entities associated for the purpose of causing or inducing a breach of contract and breach of the covenant of good faith and fair dealing of Plaintiff's and the Missouri Conspiracy Class's auto policies.

68. The GEICO entities associated for the purpose of causing unjust enrichment by inappropriately adding individuals to Plaintiff's and Missouri Conspiracy Class's policies that should not have been added.

69. GEICO is jointly and severally liable for the underlying acts alleged in this petition.

## Class Allegations

70. Plaintiff brings this action individually and as a class action pursuant to the provisions of Rule 52.08(a), (b)(2), and (b)(3) of the Missouri Rules of Civil Procedure for these classes ("Classes"):

### *Nationwide Class*

All insureds in the United States who: (a) were insured by one or more of the GEICO entities who insured Plaintiff; (b) GEICO sent a document stating it would add a driver based on information obtained from a third-party source; and (c) paid an increased premium after the driver was added by GEICO without any action taken by the insured.

### *Missouri Class*

All insureds who: (a) were insured by one or more of the GEICO entities who insured Plaintiff; (b) GEICO sent a document stating it would add a driver based on information obtained

11

from a third-party source showing a Missouri address; and (c) who paid an increased premium after the driver was added by GEICO without any action taken by the insured.

### *Missouri Civil Conspiracy Class*

All insureds who: (a) GEICO sent a document stating it would add a driver based on information obtained from a third-party source showing a Missouri address; and (b) who paid an increased premium after the driver was added by GEICO without any action taken by the insured.

71. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

72. This action has been brought and may be properly maintained for each of the Classes proposed herein under Missouri Rules of Civil Procedure 52.08.

### *Numerosity*

73. Missouri Rule of Civil Procedure 52.08(a)(1): The Classes are so numerous their individual joinder is impracticable. Plaintiff is informed and believe there are hundreds, and likely thousands, of class members based on the size of the market for automobile insurance and GEICO's share of that market, but the precise number of class members is unknown to Plaintiff.

### *Commonality and Predominance*

74. Missouri Rule of Civil Procedure 52.08(a)(2) and (b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a.    Whether GEICO engaged in the alleged conduct;

    b.    Whether GEICO's conduct violates its policies, including the Policies;

    c.    Whether GEICO's conduct violates consumer protection statutes and other laws;

    d.    Whether GEICO breached its duty of good faith and fair dealing;

    e.    Whether Plaintiff and other class members are entitled to equitable relief; and

    f.    Whether Plaintiff and other class members are entitled to damages and other monetary relief and, if so, in what amount.

### *Typicality*

75. Missouri Rule of Civil Procedure 52.08(a)(3): Plaintiff's claims are typical of the other class member's claims because, among other things, all class members were comparably injured through GEICO's wrongful conduct, and their claims are all based on this conduct.

12

Electronically Filed - St Louis County - December 09, 2025 - 09:42 AM

*Adequacy*

76.     Missouri Rule of Civil Procedure 52.08(a)(4): Plaintiff is an adequate class representative because Plaintiff's interests do not conflict with the interests of the other members of the Classes Plaintiff seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately pursued by Plaintiff and undersigned counsel.

*Superiority*

77.     Missouri Rule of Civil Procedure 52.08(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against GEICO, so it would be impracticable for members of the Classes to individually seek redress for GEICO's wrongful conduct. Even if class members could afford individual litigation, the court system could not. Individualized litigation creates potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
### Breach of Contract
### (Plaintiff, Nationwide Class, and Missouri Class)

78.     Plaintiff repeats and realleges all preceding paragraphs.

79.     Plaintiff, the Nationwide Class, and Missouri Class purchased insurance from GEICO.

80.     GEICO promised to provide coverage to Plaintiff, the Nationwide Class, and Missouri Class.

81.     GEICO policies, including the Policies, only allow premium adjustments. They never say GEICO may add new drivers unilaterally based on third-party data. GEICO's automatic addition of drivers with no action from Plaintiff or any member of the Classes breaches the contract.

13

82. The "Persons Insured" provision in the GEICO policies, including the Policies, expressly limit liability coverage to drivers who use the vehicle with the insured's "express or implied permission." GEICO's conduct—automatically adding unrequested drivers without confirming use or consent—violates this express limitation and impermissibly broadens insureds beyond the policy's terms.

83. The "Changes" provision in the GEICO policies, including the Policies, allows premium adjustments—not the addition of drivers—when the underlying information is *actually* incorrect, incomplete, or changed. Adding unrequested drivers based on unverified, third-party data was neither an adjustment for "changed" information nor a correction of "incomplete" or "incorrect" data.

84. Nothing in Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies authorize GEICO to unilaterally add individuals—particularly strangers—to insureds' policies—and certainly not based solely on unverified third-party data. Nor do the policies authorize GEICO to treat silence or non-response as acceptance of new drivers, new risks, or increased premiums. The Policies expressly limit insureds to persons using the vehicle with the insured's "express or implied permission," which excludes strangers that GEICO never verified.

85. GEICO further breached the auto policies by imposing undocumented verification requirements not contained in the auto policies and refused to remove added individuals unless insureds provided evidence that was not "simple" to obtain.

86. GEICO had no contractual basis to "adjust" the premium upward.

87. GEICO breached the contract by wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies.

88. As a result of GEICO wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies, their premiums were increased.

89. Plaintiff, the Nationwide Class, and Missouri Class were damaged by paying more than what they owed under their policies.

90. Plaintiff, the Nationwide Class, and Missouri Class never agreed—expressly or impliedly—to insure unknown individuals, never consented to expand the insured household, and never accepted any alteration to the rated drivers on their policies. GEICO's conduct materially breached the contracts by imposing obligations and financial charges not found anywhere in the policies.

## COUNT II
### Breach of the Covenant of Good Faith and Fair Dealing
### (Plaintiff, Nationwide Class, and Missouri Class)

91. Plaintiff repeats and realleges all preceding paragraphs.

92. Implicit in the dealings, agreements, and understandings between Plaintiff, the Nationwide Class, Missouri Class, and GEICO are covenants of good faith and fair dealing.

93. GEICO breached the implied covenant of good faith and fair dealing between the parties by wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies, which increased their premiums.

94. GEICO's manipulation of its "premium adjustment" provision frustrated the common purpose of the auto policies, which is to ensure premiums reflect actual, verified changes in risk. Instead of verifying changes, GEICO used opaque algorithms and unverified third-party data to fabricate risk and shift the burden of disproving that false information onto Plaintiff, the Nationwide Class, and Missouri Class within an undisclosed 15-day email window. Such conduct exceeds any discretion GEICO has under its policies, including the Policies, and constitutes a deliberate attempt to profit from misinformation.

95. Said breaches by GEICO were not prompted by honest mistakes, bad judgment, or negligence, but rather by conscious and deliberate acts which unfairly frustrate the agreed common purpose and disappoint the reasonable expectations of Plaintiff, the Nationwide Class, and Missouri Class that no unrequested drivers would be added to their insurance policies.

96. GEICO's breach has wrongfully increased Plaintiff's, the Nationwide Class's, and Missouri Class's insurance premiums.

97. GEICO knowingly failed to resolve or rectify the above breaches, which could only be accomplished by GEICO.

98. GEICO acted in a way to promote its own self-interest in the form of increased premiums in lieu of its duty to act in good faith.

99. At all times material, there existed an implied agreement between the parties that GEICO would act in an appropriate and commercially reasonable manner and to act in good faith and fair dealing in the performance of the contract.

100. Plaintiff, the Nationwide Class, and Missouri Class have been damaged by the breach of GEICO's covenant of good faith and fair dealing by wrongfully increasing Plaintiff's,

the Nationwide Class's, and Missouri Class's insurance premiums, thereby causing significant damage to Plaintiff, the Nationwide Class, and Missouri Class.

### COUNT III
### Unjust Enrichment
### (Plaintiff, Nationwide Class, and Missouri Class)

101. Plaintiff repeats and realleges all preceding paragraphs.

102. Plaintiff, the Nationwide Class, and Missouri Class bring a common law claim of unjust enrichment against GEICO for the disgorgement of monies paid to provide insurance coverage to unrequested drivers added to their policies.

103. GEICO inappropriately added individuals to Plaintiff's, the Nationwide Class's, and Missouri Class's policies that should not have been added.

104. Even if GEICO's policies govern aspects of the parties' relationship, GEICO's conduct fell outside the four corners of the contract. Nowhere do the policies authorize GEICO to fabricate driver relationships, adjust premiums based on unverified data, or penalize insureds for failing to respond to an unexpected email or letter. Because GEICO's enrichment was obtained outside the scope of the policies, restitution is appropriate.

105. As a result of GEICO wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies, Plaintiff's, the Nationwide Class's, and Missouri Class's premiums increased.

106. GEICO was unjustly enriched by receiving these increased premiums from Plaintiff, the Nationwide Class, and Missouri Class.

107. Plaintiff, the Nationwide Class, and Missouri Class are entitled to restitution of the amount of the increased premium paid to or retained by GEICO, as GEICO is not entitled to keep these ill-gotten gains.

108. In equity and in good conscious, GEICO is obligated to provide Plaintiff, the Nationwide Class, and Missouri Class restitution of the increased premium collected and/or retained by GEICO.

## COUNT IV
### Civil Conspiracy
**(Plaintiff and Missouri Conspiracy Class)**

109. Plaintiff repeats and realleges all preceding paragraphs.

110. Plaintiff brings this Count individually and for the Missouri Conspiracy Class.

111. The GEICO entities, after a meeting of the minds, had an unlawful objective and committed wrongful acts in furtherance of a conspiracy that damaged Plaintiff and the Missouri Conspiracy Class.

112. The GEICO entities associated for the purpose of causing or inducing a breach of contract, breach of the covenant of good faith and fair dealing on Plaintiff's and the Missouri Conspiracy Class's auto policies.

113. The GEICO entities associated for the purpose of causing unjust enrichment by inappropriately adding individuals to Plaintiff's and Missouri Conspiracy Class's policies that should not have been added.

114. GEICO is jointly and severally liable for the underlying acts alleged in this petition.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff and members of the Classes demand a jury trial on all claims so triable and judgment as follows:

a) determine that this action may be maintained as a class action under Missouri Rule of Civil Procedure 52.08, certify the proposed Classes for class treatment, appoint Plaintiff as class representative for the Classes, and appoint undersigned counsel as Class Counsel;

b) enter an order finding that GEICO's actions constitute breaches of the express terms of its insurance policies, as well as its duty of good faith and fair dealing;

c) award Plaintiff and members of the Classes actual damages;

d) award pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

e) award reasonable attorney's fees and litigation costs and expenses pursuant to applicable law; and

f) grant such other legal and equitable relief as the Court may deem appropriate, including specific performance as an alternative to damages.

Electronically Filed - St Louis County - December 09, 2025 - 09:42 AM

**ONDERLAW, LLC**

By: */s/ Jesse B. Rochman*
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
Craig W. Richards, #67262
Kaitlin A. Carpenter, #74599
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
richards@onderlaw.com
carpenter@onderlaw.com
*Attorneys for Plaintiff*