UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Eric Westerfield,<br><br>    Plaintiff,<br><br>  v.<br><br>Government Employees Insurance Company,<br>GEICO General Insurance Company,<br>GEICO Indemnity Company,<br>GEICO Casualty Company,<br>GEICO Choice Insurance Company,<br>GEICO Secure Insurance Company,<br>GEICO Advantage Insurance Company, and<br>GEICO Marine Insurance Company,<br><br>    Defendants. | Case No. 4:26-cv-000173-SRC |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

1

## INTRODUCTION

Defendants' Notice of Removal provided a plausible methodology for reaching, and in fact far surpassing, the Class Action Fairness Act's ("CAFA") $5 million amount in controversy requirement. To defeat those plausible allegations, Plaintiff must prove that it would be a "legal impossibility" for that amount to exceed $5 million. Plaintiff has not met, and cannot meet, that high bar. Instead, Plaintiff looks to play an impermissible game of "gotcha" to pick holes in Defendants' otherwise reasonable calculations. This Court should not countenance such efforts, particularly where the end result puts this case exactly where it belongs—in federal court.

Throughout his Petition, rather than plead his claims with specificity, Plaintiff collectively groups eight defendants into a single entity called "GEICO," which he repeatedly accuses of instituting a "SCAM" policy[1] to inflate insureds' premiums. Indeed, Plaintiff's breach of contract, good faith and fair dealing, and unjust enrichment claims, each of which were pled on behalf of a nationwide class, refer only to conduct by "GEICO" and not by any specific defendant. *See, e.g.*, Pet. ¶¶ 90 ("GEICO's conduct materially breached the contracts by imposing obligations and financial charges not found anywhere in the policies."), 96 ("GEICO's breach has wrongfully increased Plaintiff's, the Nationwide Class's, and Missouri Class's insurance premiums."), 106 ("GEICO was unjustly enriched by receiving these increased premiums from Plaintiff, the Nationwide Class, and Missouri Class."). Plaintiff nevertheless claims to have limited his putative nationwide class to only individuals insured by "one or more of the GEICO entities who insured Plaintiff." Motion at 3. Yet nowhere in his Petition does Plaintiff state, or even suggest, which Defendant(s) those might be. Now Plaintiff seeks to use his own manufactured ambiguity as a

---

[1] Plaintiff's "Silence-Constructed Addition Mechanism" ("SCAM") naming convention is a thinly veiled verbal fiction manufactured out of thin air to make GEICO's Risk Alert program seem nefarious when it is not.

sword to defeat removal. Plaintiff's efforts are futile, as no matter how one shears this sheep, it is clear that the amount in controversy exceeds $5 million and that Plaintiff has not satisfied his hefty burden of establishing it would be "legally impossible" to exceed that amount. Removal is therefore proper and this Court should deny Plaintiff's Motion.

## STANDARD OF LAW

A "notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold" of $5 million. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added). Where such an allegation is questioned on a motion to remand, "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 88. Critically, the inquiry "is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude that they are." *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) (emphasis added). GEICO "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it," nor is it required to provide a "formula or methodology for calculating the potential damages." *K. A. by & Through B.W. v. Children's Mercy Hosp.*, 2018 WL 6445417, at *1 (W.D. Mo. Dec. 10, 2018) (quoting *Raskas v. Johnson & Johnson*, 719 F.3d 884, 887–88 (8th Cir. 2013)). Instead, GEICO can rely on "reasonable deductions, reasonable inferences, or other reasonable extrapolations" to establish the amount in controversy. *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017) (citations omitted). At that point, Plaintiff can defeat jurisdiction *only* if it "appear[s] to a *legal certainty* that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (emphasis added). Put differently, Plaintiff must "establish that it is *legally impossible* to recover in excess of the jurisdictional minimum." *Bell v. Hershey*, 557 F.3d 953, 959 (8th Cir. 2009) (emphasis added). "Even if it is highly improbable that the Plaintiff[] will recover the amounts

3

Defendants have put into controversy, this does not meet the legally impossible standard." *Raskas*, 719 F.3d at 888.

## ARGUMENT

I. **Plaintiff has failed to establish that it would be impossible for the amount in controversy to exceed $5 million.**

   A. **Defendants' Notice of Removal relied on reasonable assumptions and plausibly pled that the amount in controversy exceeds $5 million.**

Plaintiff's argument that GEICO's Notice of Removal "start[]s with the wrong group of people" is undone by his own pleadings. Mot. at 1. In its Notice of Removal and accompanying declaration, GEICO provided evidence that it had identified "over 1000 insureds who had GEICO policies issued to a residence in Missouri and had a driver identified by Risk Alert added to their policy 'by GEICO without any action taken by the insured,' as the Petition puts it, within the past five years." ECF No. 1-2, Declaration of Allison Hoskins ("First Hoskins Declaration") ¶ 3. Building from that figure, GEICO calculated that the amount in controversy exceeded $5 million based on alleged actual damages alone. ECF No. 1, Notice of Removal ¶ 28; First Hoskins Decl. ¶ 8. Now, Plaintiff argues that by virtue of his ambiguous class definition, this amount should be much lower. Yet as the Petition makes clear, Plaintiff's allegations, including throughout each of the relevant legal claims, were asserted broadly against *all* GEICO defendants. Accordingly, Defendants' calculations and preliminary assessment were reasonable and sufficient to sustain removal.

Throughout his Petition, Plaintiff repeatedly alleges that "GEICO," broadly defined to include *all* eight Defendants, Pet. at 1, "obtains unverified information from third-party sources, treats that information as presumptively true, issues an automated 15-day negative option, and then unilaterally adds unrequested drivers if the insured does not respond in time. This results in unauthorized premium increases and coverage distortions across thousands of policies." Pet. ¶ 4.

4

While Plaintiff now clarifies that he intended to limit his nationwide class to only individuals insured by "one or more of the GEICO entities who insured Plaintiff," at no point in time does Plaintiff specify the entity that insured him (a fact that should be known to Plaintiff).[2] Nor does Plaintiff make *any* attempt in his Petition to distinguish allegations against the Defendant(s) that insured him as compared to those against all Defendants. *See, e.g.*, Pet. ¶¶ 6 ("Plaintiff brings this action individually and for all similarly situated insureds whose premiums were increased because GEICO added unrequested individuals to their policies through the SCAM."), 23 ("These unified systems and practices result in identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data."), 87 ("GEICO breached the contract by wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies.").[3] It was therefore entirely reasonable for Defendants to assume that Plaintiff intended to bring his nationwide claims against all Defendants, justifying GEICO's use of the "1,000 insureds" figure in its Notice of Removal. *See Raskas*, 719 F.3d at 888 n.1 (permitting reasonable reading of Complaint and noting that "Plaintiffs cannot attempt to limit [their allegations] after the fact to defeat jurisdiction"); *Femmer v. Sephora USA, Inc.*, 2020 WL 5632443, at *3 (E.D. Mo. Sept. 21, 2020) (permitting "assumptions [that were] reasonable based on allegations in the complaint").

---

[2] *See, e.g.*, Pet. ¶ 29 ("Plaintiff was a named insured under one or more automobile insurance policies issued by one or more GEICO-branded underwriting companies.").

[3] *See also, e.g.*, Pet. ¶¶ 81 ("GEICO's automatic addition of drivers with no action from Plaintiff or any member of the Classes breaches the contract."), 88 ("As a result of GEICO wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies, their premiums were increased."), 90 ("GEICO's conduct materially breached the contracts by imposing obligations and financial charges not found anywhere in the policies."), 93 ("GEICO breached the implied covenant of good faith and fair dealing between the parties by wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies, which increased their premiums."), 106 ("GEICO was unjustly enriched by receiving these increased premiums from Plaintiff, the Nationwide Class, and Missouri Class.").

Plaintiff's remaining critiques to Defendants' Notice of Removal can be easily addressed. *First*, Plaintiff argues that it was not reasonable to extrapolate from Missouri to the remaining states in which GEICO's Risk Alert program is active by using Missouri as an "average" state. Mot. at 6. But Plaintiff's argument is again undone by his own words, as he concedes that "Missouri accounts for two percent of the U.S. population." *Id.* In other words, Missouri is *precisely* an "average" U.S. state, justifying GEICO's reasonable extrapolation. *See Waters v. Home Depot USA, Inc.*, 446 F. Supp. 3d 484, 493 (E.D. Mo. 2020) ("As the removing defendant, Home Depot is permitted to rely on 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' to establish the amount in controversy."). Even crediting Plaintiff's argument, GEICO can confirm that Missouri's population is disproportionately small compared to the rest of the states in which GEICO's Risk Alert program is active. Ex. A, Declaration of Allison Hoskins ("Second Hoskins Decl.") ¶ 3.[4] Put differently, GEICO's preliminary assessment applied a 30x multiplier based on Missouri's pro rata share of the U.S. population, but when considering Missouri's pro rata share of the subject thirty states, an even larger 35x multiplier would have been justified. *Id.* In either event, and as detailed in Section I.B, *infra*, GEICO's ongoing analysis has identified more than 30,000 nationwide insureds even based on Plaintiff's narrowed class definition, further bolstering the reasonableness of its initial calculations.

---

[4] As detailed in the accompanying declaration, GEICO takes active measures to keep confidential and prevent the unintended disclosure of the number of individuals or the states in which its Risk Alert program is active, as well as certain sensitive financial information, including insured premiums, rate increases, and other related financial data. Second Hoskins Decl. ¶ 2. GEICO recognizes, however, this Court's February 23, 2026 Order that, with respect to "the figures needed to determine whether federal-question jurisdiction exists . . . , [t]he public's right to monitor the Court's decision to exercise its limited jurisdiction (or not) outweighs Defendants' interest in preserving the confidentiality of the figures[.]" ECF No. 36 at 3. Because GEICO believes the data contained within this motion falls within the ambit of the Court's prior Order, it does not separately move to seal such information, but reiterates its belief that such information is confidential and competitively sensitive to GEICO.

*Second*, Plaintiff argues that GEICO's use of a $2.20 per day damages figure, which was based on *Plaintiff's own purported overcharge*, is somehow not reasonable. Mot. at 7. Not so, as Plaintiff has alleged himself to be a typical member of the putative class, and Defendants are permitted to rely on Plaintiff's alleged harm as a proxy for damages. *See, e.g.*, *Scherrer v. Foremost Ins. Co. of Grand Rapids, Mich.*, 2018 WL 1508904, at *3 (E.D. Mo. Mar. 27, 2018) (permitting defendant "to simply multiply the average of [a named plaintiff's] claims by the total number of potential class members"); *Doss v. Am. Family Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) ("Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy."). Regardless, as detailed below, GEICO has estimated the average premium increase for a youthful driver added pursuant to its Risk Alert program to be more than Mr. Westerfield's $2.20 alleged overcharge. *See* Second Hoskins Decl. ¶ 7. Accordingly, its use of Plaintiff's $2.20 per day damages figure was reasonable and, if anything, undercounted the amount in controversy.

*Third*, Plaintiff similarly argues that GEICO's "90-day" approximation was not reasonable and is "untethered to evidence." Mot. at 7. Once again, Plaintiff is mistaken. As detailed in the Notice of Removal, Plaintiff seeks recovery for a five-year period. To the extent a policyholder had a driver added to their policy at the start of the putative class period and did not take steps to remove that driver, the insured would have been allegedly overcharged for *more than 1,800 days*. GEICO's use of a figure of less than 5% of the total class period is therefore entirely reasonable under the circumstances. *See Home Depot*, 446 F. Supp. 3d at 492 ("When the preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on reasonable assumptions,' and there is no demand at the early stages of removal to conclusively

7

establish damages."); *Allen Beth Inc. v. Waste Connections US, Inc.*, 667 F. Supp. 3d 956, 958 (E.D. Ark. 2023) ("Waste Connections isn't required to estimate an average amount the potential class members paid in excessive rate increase charges over the five-year period; nor must it provide a formula or methodology for calculating potential damages."). In fact, in a nearly identical class action brought by counsel for Plaintiff that is pending in Florida pursuant to CAFA jurisdiction, the named plaintiff alleged that he had a driver added to his policy by GEICO in March 2024 and that, as of March 2025, he was still paying for that newly added driver. *See* Complaint ¶¶ 15-16, *Kane v. GEICO Cas. Co.*, No. 6:25-cv-00532 (M.D. Fla. Mar. 26, 2025), ECF No. 1 (the "*Kane* Action").[5] In other words, plaintiff in that case alleged that GEICO overcharged him pursuant to the same Risk Alert program at issue in this case for a period of more than *one year*. That data point is not an outlier, as GEICO's preliminary assessment has found that, based off of the sampling applied, approximately half of GEICO's insureds continue to have an added driver on their account after 184 days, further evidencing the reasonableness of GEICO's 90-day figure. Second Hoskins Decl. ¶ 8.

To save its argument, Plaintiff posits that GEICO should not be permitted to include in its calculation "never removed" household drivers because "[u]nder GEICO's own theory of the case," "any alleged overcharge attributable to their addition would probably result in nominal damages." Mot. at 7-8. Setting aside Plaintiff's apparent concession that certain putative class

---

[5] As noted in GEICO's Notice of Removal, the *Kane* Action—which concerns the same nucleus of facts and was brought by the same counsel as represents Mr. Westerfield here—was filed in the Middle District of Florida against a single defendant, GEICO Casualty Company, pursuant to CAFA jurisdiction. *See* Notice of Removal ¶ 2. Now, Mr. Westerfield, through this same counsel, has challenged whether such jurisdiction is appropriate in this case, notwithstanding that the only material difference between the two actions is that the instant case involves *seven additional GEICO defendants*. If the *Kane* Action against GEICO Casualty Company is suitable for federal treatment, then there can be no doubt that this case brought against GEICO Casualty Company plus seven other GEICO entities is too.

members would not have suffered any damages, Plaintiff misunderstands the purpose of a Notice of Removal.  It is not GEICO's burden to establish that, under its "own theory," Plaintiffs will recover in excess of $5 million.  Nor would that make sense, as GEICO denies liability and believes that Plaintiff is not entitled to any recovery.  Instead, the relevant inquiry is whether the *amount in controversy*, based on Plaintiff's claims as pleaded in his petition, exceeds $5 million.  As such, it was reasonable to include potential class members who, according to Plaintiff, had a driver "wrongfully added" to their policy and paid an alleged overcharge as a result.  *See* Pet. ¶¶ 88-89 ("As a result of GEICO wrongfully adding drivers to Plaintiff's, the Nationwide Class's, and Missouri Class's insurance policies, their premiums were increased.  Plaintiff, the Nationwide Class, and Missouri Class were damaged by paying more than what they owed under their policies.").

*Finally*, Plaintiff takes issue with GEICO's inclusion of attorneys' fees in its calculation of damages.  But Plaintiff is playing yet another game of "gotcha," as Plaintiff ignores that *his own petition* asked this Court to "award reasonable attorney's fees."  Pet., Request for Relief (e).  In so doing, he rendered it entirely reasonable for GEICO to include attorneys' fees in its calculation of the amount in controversy.  *See Waller v. Henkel Corp.*, 2023 WL 3750417, at *2 (E.D. Mo. June 1, 2023) (finding satisfaction of amount in controversy "is only bolstered when the total amount of sales is considered in conjunction with Plaintiff's request for attorneys' fees").  The fact that Plaintiff now concedes that he has "plead[] no contractual or statutory basis for fee-shifting" (Mot. at 9) should not alter that conclusion.  Regardless, Plaintiff's narrowing of his allegations is immaterial, as GEICO's Notice of Removal alleged an amount in controversy that exceeded $5 million even *before* considering attorneys' fees, justifying removal on alleged actual damages alone.  *See* Notice of Removal ¶ 28; First Hoskins Decl. ¶ 8.

9

Because GEICO's original calculations plausibly alleged that the amount in controversy exceeded CAFA's $5 million threshold, and because Plaintiff cannot establish that it would be "legally impossible" for the amount in controversy to exceed $5 million based on the allegations in the Petition, this Court should reject Plaintiff's motion to remand.

### B. GEICO's ongoing analysis has established that, even adopting Plaintiff's narrowed class definition, the amount in controversy exceeds $5 million.

#### i. Using Plaintiff's narrowed class definition, the total amount in controversy exceeds $5 million.

Even crediting Plaintiff's narrowed class definition, the amount in controversy still exceeds $5 million. Plaintiff defines his Nationwide Class as "[a]ll insureds in the United States who: (a) were insured by one or more of the GEICO entities who insured Plaintiff; (b) GEICO sent a document stating it would add a driver based on information obtained from a third-party source; and (c) paid an increased premium after the driver was added by GEICO without any action taken by the insured." Pet. ¶ 70. As detailed in the accompanying declaration, Mr. Westerfield was insured by GEICO Advantage, GEICO Secure, and GEICO Indemnity at various times within five years of the filing of his Petition. Second Hoskins Decl. ¶ 4. Based on this information, GEICO's updated analysis has identified more than 100,000 nationwide insureds who had a driver added to their policy by one of those three entities pursuant to GEICO's Risk Alert program, "without any action taken by the insured," within the past five years. *Id.* ¶ 5.[6] In other words, while GEICO's preliminary investigation estimated that there were approximately "30,000 insureds" included within Plaintiff's nationwide class, GEICO's further investigation has shown that figure to be overly conservative by a factor of three. As a result, because GEICO's original Notice of Removal

---

[6] As detailed in the accompanying declaration, this information is challenging and burdensome to collect, particularly in such a short time frame. Accordingly, GEICO's updated figures detailed herein continue to be based solely on its initial investigation and GEICO reserves the right to modify such figures as discovery progresses, if necessary.

10

satisfied the amount in controversy based on the smaller figure, this revised set of insureds must, by definition, also exceed the $5 million threshold, even before considering a 30% award of attorneys' fees.

### ii. Adopting the most narrowed possible reading of Plaintiff's class definition still results in an amount in controversy exceeding $5 million.

Even were GEICO to adopt the narrowest possible reading of Plaintiff's nationwide class definition and limit its calculations to only the entity that sent Plaintiff the notice at issue in this case, the number of allegedly impacted nationwide insureds would still total more than 15,000. Second Hoskins Decl. ¶¶ 4, 6. Adding to that figure the number of applicable individuals with residences in Missouri who were insured by any other Defendant (and therefore would be part of a non-overlapping Missouri Civil Conspiracy Class), the total number of putative class members exceeds 20,000. *Id*. at ¶ 6. Thus, working backwards from CAFA's $5 million threshold, GEICO need only establish, by a preponderance of the evidence, that each of these 20,000 insureds would have been allegedly overcharged by $250 each (assuming attorneys' fees do not apply).

As detailed in the accompanying declaration, GEICO has further found that, of those 20,000 insureds, approximately half continued to have the newly added driver on their account 184 days later. *Id.* ¶ 8. Thus, based *solely* on that partial set of putative class members, and assuming that each of the relevant drivers was removed exactly on day 184, for Plaintiff's claims to exceed the amount in controversy requirement, the average daily overcharge need only exceed $2.72. While generating a precise figure is extremely difficult and prohibitively burdensome, GEICO's preliminary investigation has calculated the approximate average premium increase for a newly added driver pursuant to GEICO's Risk Alert program to be more than $2.72 per day. *Id*. ¶ 7. When considering that many of these drivers would have remained on an insured's policy beyond day 184, adding in the remaining 10,000 insureds who had drivers on their policies for

11

fewer than 184 days, and accounting for attorneys' fees, there can be no doubt that removal is warranted.

## II. Jurisdictional Discovery is Not Warranted.

For the reasons detailed above, GEICO has plainly satisfied its burden to allege that the amount in controversy exceeds $5 million. This is true under both the assumptions set forth in its original Notice of Removal and those set forth herein. Notwithstanding this fact, Plaintiff argues that "[i]f Defendants attempt to cure the defects in their amount-in-controversy showing through new evidence submitted in opposition to remand—or the Court determines that Defendants' jurisdictional showing could be resolved on the current record—Plaintiff requests limited jurisdictional discovery tailored to the amount in controversy." Motion at 10. There is no support in law or fact for Plaintiff's overbroad and premature discovery demand.

At the outset, jurisdictional discovery is not warranted where GEICO plausibly alleges that the amount in controversy exceeds $5 million. As made clear by the Eighth Circuit, GEICO "is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it," nor is it required to provide a "formula or methodology for calculating the potential damages." *K. A.*, 2018 WL 6445417, at *1 (quoting *Raskas*, 719 F.3d at 887–88). Indeed, "[w]hen the preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on reasonable assumptions,' and ***there is no demand at the early stages of removal to conclusively establish damages***." *Home Depot*, 446 F. Supp. 3d at 492 (emphasis added). Accordingly, the type of broad, sweeping discovery that Plaintiff seeks is entirely unwarranted at this stage of the case. *See Schott v. Overstock.com, Inc.*, 2021 WL 148875, at *5 (E.D. Mo. Jan. 15, 2021) (denying motion for limited discovery where defendant presented "sufficient evidence that the amount in controversy" requirement was met); *Baker v. NNW, LLC*, 2015 WL 12843831, at *2 n.2 (W.D. Mo. June 1, 2015) (denying request for jurisdictional

12

discovery because "the removing party's burden to demonstrate the requisite amount-in-controversy" is "not a demand for proof" and "[d]iscovery and trial come later").

But even assuming, *arguendo*, that jurisdictional discovery was warranted—which it is not—Plaintiff's demand would be extraordinarily overbroad and unduly burdensome. Specifically, Plaintiff seeks "(1) identification of the GEICO underwriting entity that issued Plaintiff's policy; (2) identification of the states the Risk Alert program operated; (3) the number of drivers added without policyholder action by underwriting entity and by state; (4) the duration such drivers remained on policies; and (5) the additional premiums charged during those periods." Motion at 10-11. Setting aside the first item, which is plainly within Plaintiff's possession and has been identified by GEICO in the accompanying declaration in any event, each of the remaining four items addresses issues core to the fundamental questions in dispute in this lawsuit. Because those items—which are highly burdensome to collect, *see* Second Hoskins Decl. ¶¶ 5, 7, 8—may, and likely will, be affected by GEICO's anticipated motion to dismiss in this lawsuit, permitting a fishing expedition this early in the case would not be warranted. *Reitz v. Nationstar Mortg. LLC*, 2012 WL 1656724, at *3 (E.D. Mo. May 10, 2012) (rejecting request for jurisdictional discovery based on "attenuated and baseless assertions" that would permit a "fishing expedition" and be "a waste of time and financial resources"). This Court should therefore deny Plaintiff's premature request for discovery.

## CONCLUSION

For the reasons detailed herein, Defendants respectfully request that the Court deny Plaintiff's motion to remand and maintain jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Date: March 9, 2026                    Respectfully submitted,

*/s/ W. Jason Rankin*
W. Jason Rankin #626724
Charles Insler, #58623
Emilee M. Bramstedt, #71802
701 Market St., Ste. 1400
St. Louis, MO 63101
314-241-6160
wjr@heplerbroom.com
cni@heplerbroom.com
emb@heplerbroom.com

George E. Mastoris
(*pro hac vice* forthcoming)
Adam P. Moskowitz
(*pro hac vice* forthcoming)
**WINSTON & STRAWN LLP**
200 Park Ave.
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
gmastoris@winston.com
apmoskowitz@winston.com

Samantha Lerner
(*pro hac vice* forthcoming)
**WINSTON & STRAWN LLP**
300 N. LaSalle Drive
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
slerner@winston.com

*Counsel for Defendants*
*Government Employees Insurance Company,*
*GEICO General Insurance Company,*
*GEICO Indemnity Company,*
*GEICO Casualty Company,*
*GEICO Choice Insurance Company,*
*GEICO Secure Insurance Company,*
*GEICO Advantage Insurance Company, and*
*GEICO Marine Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Opposition to Plaintiff's Motion to Remand was filed electronically on March 9, 2026, and served by operation of the Court's electronic filing system upon all attorneys of record.

        */s/ W. Jason Rankin*

        *Counsel for Defendants*
        *Government Employees Insurance Company,*
        *GEICO General Insurance Company,*
        *GEICO Indemnity Company,*
        *GEICO Casualty Company,*
        *GEICO Choice Insurance Company,*
        *GEICO Secure Insurance Company,*
        *GEICO Advantage Insurance Company, and*
        *GEICO Marine Insurance Company*