**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Eric Westerfield,<br><br>Plaintiff,<br><br>v.<br><br>Government Employees Insurance Company,<br>GEICO General Insurance Company,<br>GEICO Indemnity Company,<br>GEICO Casualty Company,<br>GEICO Choice Insurance Company,<br>GEICO Secure Insurance Company,<br>GEICO Advantage Insurance Company, and<br>GEICO Marine Insurance Company,<br><br>Defendants. | Case No. 4:26-cv-00173-SRC |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

Plaintiff's claims in this action are replete with procedural and substantive defects warranting dismissal. At the outset, Missouri is not the proper forum for this lawsuit. To the contrary, Plaintiff's claims are substantively identical to an earlier-filed class action pending in the Middle District of Florida—brought by the same lawyers who represent Plaintiff here—and thus should be dismissed in favor of that action pursuant to federal courts' well-established "first-to-file" rule. Further, even assuming this case were "first filed" in this court, which it was not, dismissal would still be warranted for lack of personal jurisdiction over GEICO. That is because this case has nothing to do with Missouri. To the contrary, Mr. Westerfield was a Kansas resident with a Kansas insurance policy at the time of his alleged injury and none of the relevant events occurred in Missouri.

Even setting aside these foundational procedural defects, Mr. Westerfield's Petition fails to state a claim on the merits, as the addition of a driver to his policy upon fifteen days' notice—the alleged "misconduct" that gives rise to each of his causes of action—was *expressly authorized* by his GEICO insurance policy. Accordingly, Mr. Westerfield's claims for breach of contract, good faith and fair dealing, unjust enrichment, *and* civil conspiracy should all be dismissed on that basis. Nor are those the only flaws in the Petition. Mr. Westerfield's good faith and fair dealing and unjust enrichment claims are independently subject to dismissal as duplicative of and inconsistent with his breach of contract claim, as is his civil conspiracy claim, which cannot be asserted against a group of affiliates pursuing a shared, lawful purpose. For these reasons, and because none of these fatal flaws may be cured through repleading, GEICO respectfully requests that the entirety of Mr. Westerfield's petition be dismissed with prejudice.

## BACKGROUND

"GEICO's principal business—and the principal business of each GEICO-branded underwriting company—is the sale of private-passenger automobile insurance in all 50 states and the District of Columbia." Pet. ¶ 26. In exchange for providing such service, GEICO's insureds pay premiums that are based on a multitude of factors, including the number of authorized drivers on a given account, the number and types of vehicles insured, and the record of the subject drivers, to name a few. *See* ECF No. 19-1 (the "Policy") at 27–28. To ensure that GEICO is charging them the appropriate premium in light of those factors, GEICO's insureds explicitly agree that GEICO may make changes to an insured's premiums during the policy term where information is incorrect, incomplete, or inaccurate. *See* Pet. ¶ 83. Specifically, Section V of the Policy provides that, because "[t]he premium for each auto is based on the information [GEICO] ha[s] in [an insured's] file":

> (a) [GEICO] may adjust [an insured's] policy premiums ***during the policy term*** if any of this information on which the premiums are based is incorrect, incomplete, or changed.
>
> (b) [The insured] will cooperate with [GEICO] in determining if this information is correct and complete.
>
> (c) [The insured] will notify [GEICO] of any changes in this information.

Policy at 27–28 (emphasis added). As relevant (and, frankly, dispositive) here, "[t]his information includes, but is not limited to . . . the persons of legal driving age residing in [the insured's] household." *Id.*

According to the Petition, GEICO sent Mr. Westerfield an "email and/or letter" pursuant to Section V of the Policy, explaining that it had identified an individual—"based on information obtained from a consumer reporting agency"—who potentially resided at Mr. Westerfield's address and needed to be added to his policy "if they use or have ownership in your vehicle(s) and do not

carry their own insurance." ECF No. 19-9 at 1; *see also* Pet. ¶ 30.[1] The notice also provided that to the extent the individual "[did] not have any ownership in [the insured's] vehicle(s) and [did] not use [the insured's] vehicle(s)," Mr. Westerfield simply needed to alert GEICO to that fact within fifteen days. ECF No. 19-9 at 1; *see also* ECF No. 19-10 at 1; Mastoris Decl. Ex. 1. If he did not do so, GEICO would assume the information it obtained was accurate and correct his premiums accordingly. ECF No. 19-9 at 1; Mastoris Decl. Ex. 1. Mr. Westerfield concedes that he took no action in response to GEICO's notice within fifteen days, and that, as a result, GEICO added the relevant driver to his policy. *See, e.g.*, Pet. ¶¶ 31, 49, 81; *see also* Mastoris Decl. Ex. 2.

On December 9, 2025, Mr. Westerfield filed his Petition in the Circuit Court of St. Louis County, Missouri, challenging GEICO's authorized premium adjustments and asserting claims on behalf of putative nationwide and Missouri classes for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and civil conspiracy. Pet. ¶¶ 78–114. GEICO timely removed to the Eastern District of Missouri on February 4, 2026, pursuant to the subject matter jurisdiction provided by the Class Action Fairness Act ("CAFA"). ECF No. 1. Plaintiff subsequently filed a motion to remand, which was later withdrawn and refiled, after which GEICO filed its opposition on March 9, 2026. ECF Nos. 27, 34, 38, 39, 40.

---

[1] Notably, Mr. Westerfield's allegations are not pled with any specificity and the Exhibits to his Petition are not unique to Mr. Westerfield. Rather, Exhibits 9 and 10 to Mr. Westerfield's Petition are templates from an unknown source containing placeholders and, in certain instances, redactions. *See* ECF Nos. 19-9 and 19-10. At no point in his Petition does Mr. Westerfield identify the date of his alleged notice, the identities of the driver(s) he alleges were added, or any material information that may substantiate his claims beyond broad and generic statements that he "did not (and does not) know the driver identified." Pet. ¶ 32. For ease of the Court's assessment, GEICO has included a copy of the Risk Alert notice sent to Mr. Westerfield, along with the declarations page to Mr. Westerfield's policy adding the driver at issue. *See* Declaration of George E. Mastoris ("Mastoris Decl."), Exs. 1 and 2. Because these materials are central to Mr. Westerfield's claims, they may be considered here. *Est. of Schwartz v. Assisted Recovery Centers of Am., LLC*, 2017 WL 840542, at *4 (E.D. Mo. Mar. 3, 2017) ("Where the extraneous documents are central to the plaintiff's case . . . the court may examine the documents in deciding a motion to dismiss.").

A nearly identical putative class action—brought by the same counsel as represents Mr. Westerfield here—has been pending in the Middle District of Florida since March 2025 under the caption *Kane v. GEICO Casualty Co.*, Case No. 6:25-cv-00532-JSS (M.D. Fla. 2025) (the "*Kane* Action"). The allegations and theories in the *Kane* Action are substantively identical to those asserted in this case, in that they challenge GEICO's same practice of identifying potential household drivers, issuing a notice explaining that the driver must be added to the insured's policy barring objection within fifteen days, and adjusting an insured's premiums accordingly. *See* Class Action Complaint Amended by Interlineation, *Kane* Action, ECF No. 44-1 (the "*Kane* Compl.") ¶¶ 11–18, 32–37.[2]

## ARGUMENT

### I. Plaintiff's claims should be dismissed pursuant to the first-to-file rule.

The Court should dismiss this action in favor of the already-pending class action in the Middle District of Florida. Pursuant to foundational principles of judicial comity, the "first-to-file" rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Nw. Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993). "This first-filed rule 'is not intended to be rigid, mechanical, or inflexible,' but is to be applied in a manner best serving the interests of justice. The prevailing standard is that 'in the absence of compelling circumstances,' the first-filed rule should apply." *Mishkin v. Volkswagen Group of Am., Inc.*, 2022 WL 18664851,

[2] While Mr. Kane filed his Complaint on March 26, 2025 (*see Kane* Action, ECF No. 1), following Mr. Kane's death and the substitution of Mr. Kane's estate as a plaintiff, and the substitution of GEICO Casualty Company for GEICO General Insurance Company as a defendant, the complaint was amended by interlineation. *See Kane* Action, ECF Nos. 34 and 48. For ease of the Court's review, GEICO attaches the operative complaint in the *Kane* Action (Mastoris Decl. Ex. 3), of which this Court may take judicial notice. *Gray Mfg. Co., Inc v. Vehicle Serv. Grp., LLC*, 2018 WL 11411258, at *1 n.1 (W.D. Mo. June 5, 2018) (recognizing that courts may "take[] judicial notice of the proceedings" in the first-filed forum).

at *2 (E.D. Mo. Oct. 11, 2022) (internal citations omitted). In determining whether dismissal is warranted under the "first-to-file" rule, courts examine: "(1) [the] timing of events; (2) the similarity of the parties involved; and (3) the similarity of the claim or issues at stake." *Brinker v. Kraft Heinz Foods Co.*, 2024 WL 3638243, at *2 (E.D. Mo. Aug. 1, 2024) (citation omitted). Here, where the same counsel has filed nearly identical claims on behalf of putative plaintiffs in an undisputably earlier-filed case against GEICO, all three factors weigh in favor of application of the "first-to-file" rule.

*First*, the timing here unambiguously favors application of the doctrine, as Mr. Kane filed his Complaint on March 26, 2025, while Mr. Westerfield did not institute the instant action until December 9, 2025, more than eight months later. *See, e.g.*, *Mishkin*, 2022 WL 18664851, at *2; *Brinker*, 2024 WL 3638243, at *2 (citing *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) (explaining "the first court in which jurisdiction attaches has priority to consider the case")).

*Second*, the similarity between the parties in this case and the *Kane* Action also militates clearly in favor of dismissal. Notably, parties need not be "perfectly identical" to warrant application of the "first-to-file" rule; instead, they need only "substantial[ly] overlap." *Mishkin*, 2022 WL 18664851, at *2 (citing *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790 (6th Cir. 2016)). In considering "substantial overlap," the determinative consideration is not whether they are exactly the same individuals or entities, but whether "the parties' *interests* in each case are clearly aligned[.]" *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 WL 4363723, at *2 (W.D. Mo. Sept. 21, 2012) (emphasis added). There is no real dispute that test is met here.

Geico Casualty Company is a defendant in both lawsuits and has an equal interest in defending itself against the identical allegations in both suits. To that same end, Mr. Westerfield alleges that all Defendants are affiliates of one another with "identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data." Pet. ¶ 23; *see also id.* ¶ 28, 63 ("The SCAM Threats reflect and confirm enterprise unity, common ownership, shared systems, common underwriting processes, and uniform business practices across GEICO."). Accordingly, they each share an interest in defending that alleged operational practice. *Masud v. TD Ameritrade Inc.*, 2025 WL 1644423, at *6 (D. Neb. June 10, 2025) ("Plaintiffs sued substantially similar defendants—members of the same corporate family who are aligned on every issue."); *Evans v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 12600285, at *1 (W.D. Mo. Feb. 12, 2014) (applying first-to-file rule to cases involving corporate affiliates).

Mr. Westerfield's and Mr. Kane's interests are likewise aligned, as they both challenge the same conduct and seek the same relief. *Compare, e.g.*, Pet. ¶¶ 1–6, *with Kane* Compl. ¶¶ 1–4; *see also Brinker*, 2024 WL 3638243, at *2 (finding overlap where named plaintiffs brought substantively similar claims). Indeed, where Mr. Westerfield alleges that "GEICO's marketing, underwriting, driver-data collection, and claims administration are conducted through unified nationwide systems, giving rise to consistent practices across all GEICO-branded underwriting companies," application of the first-to-file rule is particularly warranted. *See General Committee of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995) (applying first-to-file rule where the issue was "one of national ramifications" requiring "a single definitive ruling"). This is especially true here, as Mr. Kane's putative nationwide class of GEICO Casualty insureds overlaps substantially with Plaintiff's Missouri civil conspiracy class, therefore

increasing the risk of duplicative or inconsistent judgments. *Compare Kane* Compl. ¶ 25 ("All insureds in the United States whom Geico [Casualty] sent a notice automatically adding a driver based on information obtained from a consumer reporting agency and who paid an increased premium after the driver was added by Geico without any action taken by the insured."), *with* Pet. ¶ 70 ("All insureds who: (a) GEICO [including but not limited to GEICO Casualty] sent a document stating it would add a driver based on information obtained from a third-party source showing a Missouri address; and (b) who paid an increased premium after the driver was added by GEICO without any action taken by the insured.").[3] And even were there not to be overlap among the classes, application of the "first-to-file" rule would still be warranted given the significant overlap of core facts and allegations. *See, e.g.*, *Burlington N. R.R.*, 895 F. Supp. at 252 (applying first to file rule when the legal issue in dispute was "identical" and would have "national ramifications"); *Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (applying first to file rule to cases with "nearly identical issues," even though "classes [were] mutually exclusive").

*Third*, as noted above, the issues in dispute are identical across both cases, warranting application of the "first to file" rule. Both cases involve the exact same allegations concerning GEICO's Risk Alert program, and both cases bring claims for breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment. *Compare* Pet. ¶¶ 78–108, *with Kane* Compl. ¶¶ 32–54. While each case involves one unique claim not present in the other (*i.e.*, civil conspiracy in this case and Florida's Deceptive and Unfair Trade Practices Act in the *Kane* Action), courts routinely recognize that "[a]lternative or additional state law claims not present in

---

[3] GEICO believes that nationwide treatment of Mr. Kane's and Mr. Westerfield's putative class actions is inappropriate. With that said, unless and until the Court in the *Kane* Action rules in favor of GEICO on this issue, there still exists a risk of duplicative or inconsistent judgments.

[the first-filed action] [are] insufficient to require the court to abstain from applying the first-filed rule." *Wright v. Walden University, LLC*, 2017 WL 1435717, at *3 (D. Minn. Apr. 21, 2017); *see also Brinker,* 2024 WL 3638243, at *3 ("Although there are additional claims in each case that are not identical, there is substantial overlap between the issues involved in both cases."); *HRB Tax Grp., Inc.*, 2012 WL 4363723, at *2 (finding "additional claims" immaterial where "either court will be required to look at the same documents and circumstances and refer to and apply the same legal principles"). Instead, the core question is whether the complaints "challenge the same general practice," which is plainly the case here. *Masud*, 2025 WL 1644423, at *5. Because the factual core of the *Kane* Action is indistinguishable from the instant action, and proceeding with parallel litigation would be "[a] waste of judicial resources and an unnecessary risk of inconsistent rulings may result from litigating the same issues in two courts," application of the "first-to-file" rule is warranted and this case should be dismissed. *HRB Tax Grp., Inc.*, 2012 WL 4363723, at *4; *Wright*, 2017 WL 1435717, at *3.[4]

## II. Plaintiff's claims should be dismissed for lack of personal jurisdiction.

Even if this Court chooses not to apply the "first-to-file" rule and dismiss this action in favor of the earlier-filed *Kane* Action, this case should still be dismissed for lack of personal jurisdiction given Missouri's lack of any nexus to the events at issue. To bring his claim, Mr. Westerfield must satisfy his burden of alleging that this Court possesses *in personam* jurisdiction over GEICO. *Epps v. Stewart Info. Servs. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). Such jurisdiction can be either general or specific, where "'[s]pecific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state,' while

[4] Courts are granted broad discretion as to whether to dismiss, stay, or transfer a case when applying the "first-to-file" rule. In the event the Court is not inclined to dismiss this case, GEICO respectfully requests that the Court either stay the instant action pending the outcome in the *Kane* Action, or transfer this case to the Middle District of Florida.

'[g]eneral jurisdiction . . . refers to the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose.'" *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1091 (8th Cir. 2008). Here, Mr. Westerfield has failed to plead—and, in fact, is *unable* to plead—facts sufficient to sustain general or specific jurisdiction, thus compelling dismissal of his claims.

Concerning general jurisdiction, Mr. Westerfield must plead that GEICO is "essentially at home in the forum state" to meet his burden. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). For corporations, this is almost always their "place of incorporation and principal place of business." *Id.* at 137. Because, as Mr. Westerfield concedes, none of the Defendants is incorporated or has a principal place of business in Missouri, general jurisdiction is unavailable. Pet. ¶¶ 10–19; *see also, e.g.*, *Satterfield v. Gov't Emps. Ins. Co.*, 287 F. Supp. 3d 1285, 1298 (W.D. Okla. 2018) ("Because [Plaintiff] has not shown that GEICO is any more 'at home' in Oklahoma than it is 'at home' in any other state where it conduct[s] operations, the Court finds [Plaintiff] has not made a prima facie showing of general jurisdiction over GEICO.").

Specific jurisdiction, which "can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause," is similarly unavailable to Mr. Westerfield. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011). As relevant here, Missouri's long-arm statute permits jurisdiction over causes of action arising from "[t]he contracting to insure any person, property or risk located within this state at the time of contracting." Mo. Rev. Stat. § 506.500. Critically, however, at the time Mr. Westerfield received the relevant Risk Alert notice from GEICO, he was a *Kansas* resident, not a *Missouri* resident. *See* ECF No. 40-1 ¶ 4; Mastoris Decl. Ex. 2. As a result, Mr. Westerfield's Petition plainly relates to his *Kansas* policy with GEICO, not his *Missouri*

policy, and therefore falls beyond the boundaries of Missouri's long-arm statute. *See Babb v. Bartlett*, 638 S.W.3d 97, 113 (Mo. Ct. App. 2021) (affirming dismissal where claims did not "arise from" any conduct under Missouri's long-arm statute); *Copeland v. WRBM, LLC*, 679 S.W.3d 30, 40 (Mo. Ct. App. 2023) (holding that long arm statute not satisfied when "[t]here is no allegation or evidence anywhere in the record that acceptance of the employment contract occurred in Missouri"). Indeed, exercising jurisdiction over this suit would run afoul of fundamental due process considerations, which require that the "*suit-related* conduct . . . create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). That is plainly not true here, where the relevant events occurred in Kansas, not Missouri. *See* ECF No. 40-1 ¶ 4; Mastoris Decl. Ex. 2.

The mere fact that Mr. Westerfield brings a putative class action on behalf of Missouri residents does not change this analysis, as "the overwhelming majority of federal courts have held that [specific jurisdiction] applies to claims brought by *named plaintiffs* in class actions." *Lizama v. Venus Labs., Inc.*, 679 F. Supp. 3d 848, 857 (E.D. Mo. 2023) (emphasis added); *see also Dack v. Volkswagen Group of Am.*, 565 F. Supp. 3d 1135, 1142 (W.D. Mo. 2021) (dismissing claims of nonresident named plaintiffs in class action for lack of specific jurisdiction); *Hartley v. Sig Sauer, Inc.*, 2019 WL 11639618, at *4 (W.D. Mo. Nov. 6, 2019) (dismissing claims of nonresident plaintiff for lack of specific jurisdiction). In other words, it is Mr. Westerfield's burden to show that *his specific* "claims arise out of [GEICO's] contact with Missouri," not those of his putative class. *Lizama*, 679 F. Supp. 3d at 857. Because he is incapable of doing so, dismissal is warranted under Federal Rule of Civil Procedure 12(b)(2).

One final note: while GEICO recognizes that Mr. Westerfield is now insured within the state of Missouri, that contract is not the subject of this action, as no driver was added to that

agreement pursuant to GEICO's Risk Alert program. To that end, Mr. Westerfield would not even be a part of his own Missouri subclasses. *See* Pet. ¶ 70 (including "insureds who: . . . (b) GEICO sent a document stating it would add a driver based on information obtained from a third-party source ***showing a Missouri address***[.]" (emphasis added)). In any event, because Mr. Westerfield cannot plead that his claims have any nexus to his Missouri contract, his claims must be dismissed.

## III. Plaintiff's Petition also fails to state a claim upon which relief can be granted.

Even were Mr. Westerfield able to overcome the fatal procedural defects outlined above, his Petition would still be subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, because Mr. Westerfield's insurance policy with GEICO *expressly authorizes* the conduct about which he now complains, each of Mr. Westerfield's four claims fail to state a claim upon which relief can be granted. In addition, Mr. Westerfield's good faith and fair dealing and unjust enrichment claims are independently subject to dismissal as duplicative of and inconsistent with his breach of contract claim, and his civil conspiracy claim cannot stand where, as here, a group of affiliates are pursuing a shared, lawful purpose. Because each of these issues is incurable as a matter of law, Mr. Westerfield's petition should be dismissed with prejudice.

### a. Mr. Westerfield's breach of contract claim should be dismissed because his insurance policy with GEICO expressly permits the conduct alleged.

The insurance agreement at issue *expressly authorizes* the precise conduct about which Mr. Westerfield complains, thus compelling dismissal of his breach of contract claim. As detailed in Section V of the Policy, GEICO is permitted to "adjust [an insured's] policy premiums during the policy term if any of [the] information on which the premiums are based is incorrect, incomplete or changed." Policy at 27–28; *see also* ECF Nos. 19-2 at 26; 19-3 at 26; 19-4 at 26; 19-5 at 26; 19-6 at 27–28; 19-7 at 26; and 19-8 at 26. Because insureds may not always affirmatively volunteer such information (including, for example, the presence of a comparatively high-risk and

therefore expensive-to-insure youthful driver), the Policy builds in a contractual obligation for the insured to "cooperate with [GEICO] in determining if this information is correct and complete." Pet. ¶ 83; Policy at 27–28. Given that the conduct about which Mr. Westerfield complains is consistent with—and in fact expressly contemplated by—this provision, it cannot form the basis of his breach of contract claim.

Specifically, in line with Section V of the Policy, Mr. Westerfield alleges that GEICO sent written notice informing him that, based on information received from a consumer reporting agency, a driver not listed on his policy "may be a licensed or permitted driver with your address." ECF No. 19-9 at 1; ECF No. 19-10 at 1; Pet. ¶ 30; *see also* Mastoris Decl. Ex. 1. Following receipt, pursuant to the terms of the Policy, Mr. Westerfield had an obligation to "cooperate with [GEICO] in determining if this information is correct and complete." Policy at 27. GEICO further explained that, should Mr. Westerfield fail to cooperate or notify GEICO that this information was incorrect within fifteen days, the driver would be "automatically added to [his] policy." Pet. ¶¶ 30, 33; ECF No. 19-9; ECF No. 19-10; *see also* Mastoris Decl. Ex. 1. Because Mr. Westerfield undisputably failed to cooperate within the requisite time period, GEICO acted in line with Section V and adjusted his policy to include the additional driver and updated his premium accordingly. *See* Pet. ¶¶ 31, 33; *see also* Mastoris Decl. Ex. 2. Such conduct—expressly permitted by Mr. Westerfield's insurance agreement—cannot possibly form the basis of a breach of contract claim. *See AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693, 703-04 (E.D. Mo. 2023) (dismissing breach of contract claim where defendant "complied with the terms of the parties' contract"); *Gillis v. Principia Corp.*, 832 F.3d 865, 871 (8th Cir. 2016).

Mr. Westerfield attempts to fall back on the Policy's "Persons Insured" provision, arguing that it forbids the conduct explicitly authorized in the Policy's Section V. *See* Pet. ¶¶ 2, 41, 82.

But that provision is of no help to his claim, as it merely addresses the *scope of coverage*, limiting it to drivers who act with the insured's "express or implied permission" or "relatives" residing in the same household. ECF No. 19-1 at 6, 9. In that way, it does not address, and certainly does not override, GEICO's express ability to identify drivers who may fall within such coverage. *Danzig v. LoanMe, Inc.*, 2021 WL 105614, at *3 (E.D. Mo. Jan. 12, 2021) (holding that where "breach of contract claim conflicts with the plain language of the contract, the contractual language controls"). In any event, because Mr. Westerfield does not allege that GEICO failed to provide coverage to any "Persons Insured," or that any wrongful action under the "Persons Insured" provision led to his allegedly inflated premiums, such provision cannot support his breach of contract claim. *See Moore v. Firstar Bank*, 96 S.W.3d 898, 902 (Mo. Ct. App. 2003) (dismissing breach of contract claim when the alleged breach "would not [have resulted in the claimed damages]").

**b. Mr. Westerfield's breach of good faith and fair dealing claim and unjust enrichment claim each fail to state a claim upon which relief may be granted.**

Mr. Westerfield's good faith and fair dealing and unjust enrichment claims each fail for two independent reasons. *First*, each claim is subject to dismissal as either duplicative of or inconsistent with Plaintiff's breach of contract claim. Courts dismiss good faith and fair dealing allegations that "amount to just another way the contract was breached." *Cafe Agave, Inc. v. Crown Valley Winery, Inc.*, 2023 WL 4623057, at *5 (E.D. Mo. July 19, 2023). Indeed, to the extent a good faith and fair dealing claim rests on "facts" that are "exactly the same" as a breach of contract claim, it is duplicative and subject to dismissal. *Earley v. Wachovia Bank, Nat'l Ass'n*, 2009 WL 10702522, at *5 (W.D. Mo. Feb. 26, 2009) (granting summary judgment on good faith and fair dealing claim when it was "duplicative of Plaintiff's breach of contract claim"); *see also Margolies v. McCleary, Inc.,* 447 F.3d 1115, 1125 (8th Cir. 2006) (concluding that good faith and fair dealing claim and breach of contract claim were duplicative when they "rested on precisely the same

evidence"). Likewise, Missouri law is settled that unjust enrichment is "an equitable remedy based on the concept of a quasi-contract" and where "a plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply." *Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013); *Topchian v. JPMorgan Chase Bank*, N.A., 760 F.3d 843, 854 (8th Cir. 2014) ("There can be no unjust enrichment claim . . . where an express contract exists."). Because each of these claims rises and falls based on the same exact conduct alleged for Mr. Westerfield's breach of contract claim, they are subject to dismissal.

*Second*, even were Mr. Westerfield permitted to plead either of the above claims in the alternative, each claim fails as GEICO's conduct is expressly permitted by the agreement at issue, as detailed above. It is black letter Missouri law that "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 513 (8th Cir. 2018); *AIDS Healthcare Found.*, 658 F. Supp. 3d at 703 (dismissing breach of implied covenant claim where "the contract expressly permits the actions being challenged"). After all, claims for breaches of good faith and fair dealing are meant to address a party's inequitable exploitation of some gap in the contractual terms; where the contract explicitly *permits* certain conduct, there is no such gap, and such a claim cannot survive dismissal. So too with unjust enrichment—"if no injustice results from the defendant's retention of the benefit, then no cause of action for unjust enrichment will lie." *Blair v. City of Hannibal,* 179 F. Supp. 3d 901, 911 (E.D. Mo. 2016*);* *Lonergan v. Bank of Am., N.A.*, 2013 WL 12142582, at *4 (W.D. Mo. Apr. 8, 2013). Accordingly, because GEICO's conduct is expressly permitted by Mr. Westerfield's policy, Plaintiff's good faith and fair dealing and unjust enrichment claims must be dismissed.

**c. Plaintiff's civil conspiracy claim must also be dismissed.**

Plaintiff's civil conspiracy claim also fails for two independent reasons. *First*, civil conspiracy requires an underlying unlawful act, and Plaintiff has alleged none. As detailed above, GEICO's conduct is expressly permitted under the parties' agreement and therefore cannot form the basis of a civil conspiracy claim. *See Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008) ("If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well."); *Blakeney v. City of Pine Lawn, Missouri*, 2020 WL 4569175, at *13 (E.D. Mo. Aug. 7, 2020) (same). *Second*, even assuming, *arguendo*, that Mr. Westerfield could allege a wrongful act, it is black letter law that affiliated entities cannot conspire with one another. *Allied Servs., LLC v. Smash My Trash, LLC*, 2024 WL 2842633, at *46 (W.D. Mo. May 16, 2024) ("[T]wo or more 'sister' or affiliated companies, when pursuing their 'common interests,' 'cannot conspire.'"); *Davidson & Schaff Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995) ("[T]wo subsidiaries of the same parent cannot conspire."). Because Mr. Westerfield alleges that Defendants share "unified systems and practices [that] result in identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data," Pet. ¶¶ 23, 109–14, his allegations fall squarely within the contours of the intra-corporate conspiracy doctrine and must be dismissed.

## CONCLUSION

For these reasons, GEICO respectfully requests that the Court dismiss Mr. Westerfield's claims: (1) in favor of the earlier-filed *Kane* Action; (2) for lack of personal jurisdiction pursuant to Rule 12(b)(2); or (3) for failure to state a claim pursuant to Rule 12(b)(6).

Date: March 13, 2026

Respectfully submitted,

*/s/ George E. Mastoris*
George E. Mastoris (*pro hac vice*)
Adam P. Moskowitz (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Ave.
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
gmastoris@winston.com
apmoskowitz@winston.com

*/s/ Samantha Lerner*
Samantha Lerner (*pro hac vice*)
**WINSTON & STRAWN LLP**
300 N. LaSalle Drive
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
slerner@winston.com

*/s/ W. Jason Rankin*
W. Jason Rankin #626724
Charles Insler, #58623
Emilee M. Bramstedt, #71802
701 Market St., Ste. 1400
St. Louis, MO 63101
314-241-6160
wjr@heplerbroom.com
cni@heplerbroom.com
emb@heplerbroom.com

*Counsel for Defendants*
*Government Employees Insurance Company,*
*GEICO General Insurance Company,*
*GEICO Indemnity Company,*
*GEICO Casualty Company,*
*GEICO Choice Insurance Company,*
*GEICO Secure Insurance Company,*
*GEICO Advantage Insurance Company, and*
*GEICO Marine Insurance Company*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Motion to Dismiss was filed electronically on March 13, 2026, and served by operation of the Court's electronic filing system upon all attorneys of record.

*/s/ George E. Mastoris*

*Counsel for Defendants*
*Government Employees Insurance Company,*
*GEICO General Insurance Company,*
*GEICO Indemnity Company,*
*GEICO Casualty Company,*
*GEICO Choice Insurance Company,*
*GEICO Secure Insurance Company,*
*GEICO Advantage Insurance Company, and*
*GEICO Marine Insurance Company*