**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

Eric Westerfield,

    Plaintiff,

v.

Government Employees Insurance
Company et al.,

    Defendants.

Case No. 4:26-cv-00173-SRC

### Reply Memorandum to Support Motion to Remand

Defendants have not proved, by a preponderance of the evidence, that more than $5 million is in controversy. GEICO's opposition only confirms that failure. The record shows Defendants have the policy and premium data needed to calculate the alleged overcharges directly, yet they rely instead on assumptions and aggregated averages that do not correspond to the class alleged.

GEICO's supplemental affidavit confirms the amount in controversy is not a matter of speculation. The relevant figure is straightforward: the increased premium paid by the approximately 15,000 "insureds who had a driver added to their policy" by *GEICO Advantage* "pursuant to GEICO's RISK Alert Program 'without any action taken by the insured' … within the past five years." (Doc. 40-1 ¶¶ 5–7). GEICO calculated the precise premium increase for Plaintiff—$13.19. (Doc. 1-2 ¶ 6). If GEICO can calculate that amount for Plaintiff, it can perform the same calculation for the remaining insureds in its own records—thus determining the amount in controversy directly rather than relying on assumptions about population, duration, and averages.

Yet Defendants do not perform that calculation. Instead, their opposition abandons the assumptions used in the notice of removal and replaces them with a different model supported by a new declaration and a new set of assumptions. Changing the model, however, does not satisfy the

1

removing party's burden. Once a plaintiff challenges the amount in controversy, the removing defendants must support their jurisdictional estimate with competent proof that the threshold is more likely than not satisfied. *Leflar v. Target Corp.*, 57 F.4th 600, 603–04 (8th Cir. 2023); *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Defendants have not done so. And that results in "a ticket back to state court." *Leflar*, 57 F.4th at 603.

The burden of persuasion rests with the party invoking federal jurisdiction, particularly where that party has the information necessary to determine the amount in controversy. *Hertz*, 559 U.S. at 96; *see also Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447–48 (7th Cir. 2005). When the defendant holds the relevant data, the burden properly requires the defendant to produce it so "the choice between state and federal court may be made accurately." *Brill*, 427 F.3d at 448. GEICO's affidavits confirm they have the policy and premium data needed to determine the alleged overcharges. But rather than calculate the amount in controversy directly from those records, Defendants rely on assumptions drawn from aggregated data across all GEICO entities.

GEICO's response therefore fails for three independent reasons. First, it collapses the two-step CAFA jurisdiction framework and applies the wrong legal standard. Second, its jurisdictional model measures the wrong class population by expanding the relevant insureds beyond those tied to the alleged notice-sending entity. Third, even if the correct population were used, GEICO's damages model depends on unsupported assumptions about duration and premium increases that are not tied to the relevant entity and conflict with GEICO's own description of the Risk Alert Program.

GEICO has not carried its burden to establish federal jurisdiction by a preponderance of the evidence, so the case must be remanded. If the Court concludes more information is necessary to resolve the amount-in-controversy issue, limited jurisdictional discovery is appropriate.

**1. Defendants collapse the two-step CAFA inquiry and apply the wrong burden.**

GEICO's response collapses the two stages of the CAFA jurisdiction analysis into one. (Doc. 40 at 2–4). That is not the law. Once Plaintiff challenged GEICO's amount-in-controversy allegations, this case moved beyond the pleading stage and into "the evidence-weighing stage." *Id*. at 604. At that stage, GEICO—not Plaintiff—"bears the burden to establish by a preponderance of the evidence that the amount in controversy exceeds $5 million." *Id*. Because GEICO's response repeatedly skips that step and jumps directly to "legal impossibility," Defendants are trying to "confuse[]" the Court "about how to evaluate the amount in controversy at each step." *Id*. at 603.

**1.1. At the pleading stage, a notice of removal must plausibly allege the amount in controversy.**

A notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). That is the first step. *Leflar*, 57 F.4th at 603. At that step, "if the notice of removal does not plausibly allege that the case meets each of the jurisdictional requirements, the district court must remand the case right back to state court." *Id*. (cleaned up).

Defendants rely heavily on that initial pleading standard. But Plaintiff challenged GEICO's jurisdictional allegations in the motion to remand. *Id*. That challenge triggers the second step "even if the notice of removal makes the cut…." *Id*.

Here, GEICO's notice of removal was based on the wrong assumptions. GEICO's opposition confirms it. Defendants argue the notice's calculations were "reasonable" because the Petition used the term "GEICO" broadly and did not identify the specific underwriting entity that insured Plaintiff. (Doc. 40 at 4–5). That argument is a red herring. The amount in controversy under CAFA is determined by the ***class definition***, not by generalized references in the complaint. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (courts aggregate claims of persons "who fall within the definition of the *proposed* class," quoting 28 U.S.C. § 1332(d)(1)(D), (d)(6)). Plaintiff's claims

seek damages for the Nationwide Class, which directs the jurisdictional inquiry back to the class definition. (Doc. 20 ¶¶ 89, 100, 106). GEICO's response concedes the notice of removal did not measure *that* class. And GEICO's motion to dismiss concedes Plaintiff's claims "plainly relate[] to his Kansas policy with" *GEICO Advantage*. (Doc. 46 at 9–10) (citing Doc. 46-3). Having identified the policy and GEICO entity with such specificity, Defendants cannot rely on supposed ambiguity about the issuing entity to excuse the implausibility of the notice of removal.

### 1.2. Even if GEICO's notice of removal was plausible, the case moves to the evidence-weighing stage.

Once a plaintiff contests the amount in controversy, "the removing party bears the burden of showing by a preponderance of the evidence that the case meets each one of the [jurisdictional] requirements." *Id*. "Failure to do so also results in a ticket back to state court." *Id*.

So even if GEICO's notice of removal was sufficient at the pleading stage (it wasn't), that would not carry the day now. Plaintiff moved to remand, challenging GEICO's amount-in-controversy showing. So, GEICO must do more than explain why the notice of removal had a plausible estimate. GEICO must also *prove*, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.

### 1.3. At the evidence-weighing stage, GEICO must prove its assumptions are more likely than not true for the class.

At this stage, the burden rests squarely on GEICO. *Leflar*, 57 F.4th at 604. A "preponderance-of-the-evidence standard involves a straight-up weighing of the evidence to determine which side has the better of the argument." *Id*. (citing *Smith v. United States*, 726 F.2d 428, 430 (8th Cir. 1984)). "If, upon any issue in the case, the evidence appears to be equally balanced, or if it cannot be said upon which side it weighs heavier, then plaintiff has not met his or her burden of proof."

4

*Smith*, 726 F.2d at 430. The same rule applies here: if the evidence is balanced or unpersuasive, the party with the burden loses. *Id.*[1]

That matters here because GEICO's response repeatedly treats assumptions and generalizations as self-proving. They are not. Assumptions satisfy the preponderance standard only if the record shows they are more likely than not true for the class alleged. At the evidence-weighing stage, the Court must assess whether GEICO's population, rate, and duration assumptions are supported by evidence and tied to this case. If those assumptions are unsupported, conflicting, or too abstract to test, GEICO has not carried its burden. *Smith*, 726 F.2d at 430.

### 1.4. The "legal impossibility" standard comes later—only after Defendants first prove the amount in controversy by a preponderance of the evidence.

Defendants repeatedly argue Plaintiff must show it is "legally impossible" for the amount in controversy to exceed $5 million. That skips a step. The "legal impossibility" standard applies only after the removing defendant has first established the jurisdictional minimum by a preponderance of the evidence. *Bell v. Hershey Co.*, 557 F.3d 953, 959 (8th Cir. 2009) ("If the [removing parties] prove by a preponderance of the evidence that the amount in controversy is satisfied, remand is only appropriate if [the plaintiff] can establish that it is legally impossible to recover in excess of the jurisdictional minimum.").

GEICO cannot begin and end with "plausible allegation" and "legal impossibility." It must first satisfy the controlling middle step: proof by a preponderance of the evidence. If GEICO fails there, the inquiry ends and remand is required. *Leflar*, 57 F.4th at 603.

---

[1] Defendants bear the burden of persuasion on all jurisdictional requirements, including the amount in controversy. *Hertz*, 559 U.S. at 96–97; *see also Dir., Off. of Workers' Comp. Programs v. Greenwich Collieries*, 512 U.S. 267, 278 (1994) ("A standard of proof, such as preponderance of the evidence, can apply only to a burden of persuasion, not to a burden of production."). Thus, it is not enough for GEICO to merely produce an estimate or articulate a plausible methodology. GEICO must persuade the Court that the amount-in-controversy calculation "more likely than not" exceeds the minimum. *Sanchez v. Monumental Life Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996).

**1.5.   GEICO's response applies the wrong standard because it omits the controlling step.**

That is exactly how GEICO frames the issue. It says the notice of removal used a "plausible methodology," then jumps immediately to the assertion that Plaintiff must prove "legal impossibility. (Doc. 40 at 2). That formulation omits the controlling middle step: GEICO's burden to prove, by a preponderance of the evidence, that its *revised* amount-in-controversy calculation is "reasonable" and preponderates in favor of jurisdiction. *Leflar*, 57 F.4th at 604; 2 McCormick On Evid. § 339 (9th ed.)

Under that standard, the question is not whether GEICO can articulate a plausible chain of assumptions. The question is whether Defendants have shown, with competent proof, that those assumptions are more likely than not true and more than $5 million is actually in controversy. They have not. As the sections below explain, GEICO's new model still rests on the wrong population, non-entity-specific assumptions, and a duration estimate that is unsupported and internally inconsistent.

**2.   GEICO's new assumptions improperly expand the relevant class population.**

Defendants suggest two revised class populations. The first one assumes 100,000 class members (Doc. 40 at 10) and the second one assumes 20,000 class members. Neither model supports jurisdiction. (Doc. 40 at 11).

The **first model** includes insureds with a driver added by GEICO Advantage, GEICO Secure, and GEICO Indemnity. (Doc. 40 at 10). But the alleged injury arises from a policy issued by GEICO Advantage, the entity that sent the Risk Alert notice and charged the increased premium. (Doc. 40-1 ¶ 4; Doc. 1-2 ¶ 6). A named plaintiff cannot pursue claims against—and it's legally impossible to recover from—entities that did not cause the plaintiff's injury. *Wong v. Wells Fargo*

*Bank, N.A.*, 789 F.3d 889, 896 (8th Cir. 2015). Defendants therefore cannot inflate the amount in controversy by aggregating insureds of GEICO Secure and GEICO Indemnity.[2]

The **second model** includes 15,000 insureds with GEICO Advantage *plus* 5,000 Missouri insureds of other GEICO entities based on Plaintiff's civil conspiracy claim. That expansion is legally improper.

Under Missouri law, civil conspiracy does not create a separate cause of action or independent claims. *W. Blue Print Co., LLC v. Roberts,* 367 S.W.3d 7, 22 (Mo. 2012) (en banc). Rather, conspiracy merely imposes joint and several liability for the underlying wrong. *Id*. It does not create new claims by individuals who were not insured by GEICO Advantage, it just means the other GEICO entities are jointly and severally liable for wrongs done to the 15,000 insureds with GEICO Advantage. *Id*.

GEICO's jurisdictional calculation therefore relies on a population that does not correspond to the class alleged. The relevant population tied to the alleged notice-sending entity is 15,000 insureds, not 20,000.

Because Defendants bear the burden of proof at the evidence-weighing stage, this population inflation alone undermines their attempt to establish CAFA jurisdiction by a preponderance of the evidence.

3. **GEICO's new assumption of a 184-day duration is not tied to the relevant population.**

Defendants next assert "approximately half" of the 20,000 insureds had the added driver on their policy for 184 days or more. (Doc. 40 at 11). But Defendants provide no evidence showing what part of the 15,000 GEICO Advantage insureds fall within that group. Instead, the declaration

---

[2] Defendants suggest the class definition is "ambiguous." (D40 at 4). If the Court agrees the class definition is ambiguous, Plaintiff stipulates his Nationwide Class was only meant to cover the entity or entities that sent him the Risk Alert notice **and** charged him an increased premium. According to GEICO, that is GEICO Advantage. *Hawryszko v. USAA Ins. Agency, Inc.*, No. 4:24-CV-00311-SRC, 2024 WL 1485824, at *2 (E.D. Mo. Apr. 5, 2024) (post-removal stipulations can be used to clarify the amount in controversy).

aggregates data across *all* GEICO underwriting entities from the Missouri Conspiracy Class and then assumes the resulting percentage applies equally to the GEICO Advantage population. (Doc. 40-1 ¶ 8). That assumption is unsupported.

The declaration does not identify how many insureds associated with the alleged notice-sending entity (GEICO Advantage) remained on the policy for 184 days. Without that information, the Court cannot determine whether the 50% figure applies to the relevant class population.

Because GEICO's damages model depends on applying the 184-day duration assumption to the GEICO Advantage population, this population mismatch further undermines GEICO's attempt to establish the jurisdictional threshold by a preponderance of the evidence.

4. **GEICO's new assumption of a $2.72 premium increase is not tied to the class or GEICO Advantage.**

GEICO's jurisdictional model also assumes an average premium increase exceeding $2.72 per day for a newly added driver. (Doc. 40-1 ¶ 7). But the declaration does not show this figure reflects GEICO Advantage policies specifically, which is the class population. Instead, the declaration states only that the figure came from an analysis of "GEICO's policy premium increases for insureds who had a driver added pursuant to GEICO's Risk Alert program." (Doc. 40-1 ¶ 7).

That distinction matters. GEICO writes policies through multiple underwriting companies that insure different risk tiers and charge different rates. As Defendants explain, GEICO's affiliated insurers serve distinct categories of drivers with materially different premium structures. (D40-1 ¶ 7); *see also Safeco Insurance Co. of America v. Burr*, 551 U.S. 47, 53–54 (2007) (explaining how GEICO selects the "appropriate company and the particular rate at which a policy may be issued.") A premium increase derived from aggregated data across all GEICO entities does not reflect the premium increase applicable to **GEICO Advantage insureds**, which is the relevant population for the actual amount in controversy.

8

The declaration is also ambiguous for the population used to derive the $2.72 figure. The affidavit refers broadly to drivers added "pursuant to GEICO's Risk Alert program." (Doc. 40-1 ¶ 7). But Plaintiff's claims—and the class definition—are limited to drivers added "without any action taken by the insured." (Doc. 20 ¶ 70; Doc. 41-1 ¶ 5). The declaration does not state that the $2.72 figure excludes situations where the insured acted (e.g., confirmed the driver or otherwise consented to the addition). If the calculation includes those scenarios, it measures a broader population than the class alleged.

GEICO's own calculation for Plaintiff—a $13.19 increase over six days before the driver was removed—reflects an increase of about $2.20 per day, not the $2.72 figure Defendants assume in their jurisdictional model. (Doc. 1-2 ¶ 6).[3]

That mismatch matters because Defendants bear the burden to establish the amount in controversy **for the class actually alleged**. *Knowles*, 568 U.S. at 592. A premium increase derived from aggregated data across *all* GEICO entities—or from *all* Risk Alert driver additions that include situations where the insured acted—does not establish the premium increase attributable to drivers added **without insured action** on **GEICO Advantage policies**.

Because Defendants have not shown that the $2.72 daily premium increase corresponds to the relevant entity or the class definition, the figure cannot reasonably support GEICO's jurisdictional calculation. And because Defendants must prove the amount in controversy by a preponderance of the evidence, that ambiguity defeats GEICO's attempt to rely on the $2.72 figure to establish federal jurisdiction.

---

[3] Defendants also argue that using Plaintiff's own alleged overcharge as a proxy for classwide damages is "reasonable." (Doc. 40 at 7). If that premise is correct, it undermines Defendants' jurisdictional theory rather than supporting it once the correct population is used. Using the 15,000 GEICO Advantage policies, that proxy produces an amount in controversy of $197,850 (15,000 x $13.19). That figure falls short of CAFA's $5 million jurisdictional threshold. Defendants cannot simultaneously rely on Plaintiff's alleged overcharge as a "typical" proxy while ignoring the arithmetic that follows from it.

**5. GEICO's new 184-day damages theory is internally inconsistent and cannot establish the amount in controversy.**

GEICO's duration assumption also contradicts Defendants' own explanation of the Risk Alert program. The notice of removal asserted many of the added drivers are children or other household members who reside with the insured and should have been listed on the policy. (Doc. 1 ¶ 28 n.2).

Those are precisely the drivers most likely to remain on the policy "after 184 days." (Doc. 40-1 ¶ 8). But if those drivers were household members who should have been listed—and whom the insured expected to be listed despite GEICO's alleged breach in adding them—the resulting damages from their temporary addition would tend to be nominal. See *Evans v. Werle*, 31 S.W.3d 489, 493 (Mo. Ct. App. 2000); *Fitzgerald v. McNAE*, 769 F. Supp. 3d 1291, 1298 (S.D. Fla. 2025).

GEICO responds that the question is not whether Plaintiff will ultimately recover more than $5 million, but whether the amount in controversy exceeds that threshold. (Doc. 40 at 8–9). That is correct as far as it goes. But Defendants still bear the burden to establish the jurisdictional amount by a preponderance of the evidence, using a calculation that corresponds to the claims actually alleged. *Leflar*, 57 F.4th at 603–04; *Knowles*, 568 U.S. at 592–93.

GEICO's model does not satisfy that burden. Defendants rely on the presence of "never removed" household drivers who remain on the policy after 184 days to maximize the assumed duration of alleged overcharges while simultaneously assuming each month of that duration produces meaningful recoverable damages. Those assumptions cannot both be true. If the drivers were household members who should have been—and the insureds wanted—listed on the policy, the alleged overcharge because of their addition would necessarily be minimal.[4]

---

[4] Defendants also point to allegations in a separate lawsuit pending in Florida, *Kane v. GEICO Casualty Co.*, No. 6:25-cv-00532 (M.D. Fla.), where the plaintiff alleged that an added driver remained on his policy for more than a year. That allegation does not establish the duration of alleged overcharges for the class defined in this case. The *Kane*

That internal inconsistency does not make it "more likely than not" that more than $5 million is in controversy. *Sanchez*, 102 F.3d at 404. And because Defendants bear the burden of persuasion on that question, the contradiction in GEICO's model weighs against—not in favor of—federal jurisdiction. 726 F.2d at 430.

### 6. GEICO's jurisdictional calculation relies on stacked assumptions.

Defendants repeatedly argue their jurisdictional assumptions are "reasonable." At the evidence-weighing stage, a defendant's showing on the amount in controversy may rely on "reasonable assumptions." *Leflar*, 57 F.4th at 604 (citing *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925–26 (9th Cir. 2019)). But reasonable assumptions must have "some reasonable ground underlying them" and cannot be "pulled from thin air." *Arias*, 936 F.3d at 925–26. An assumption may be reasonable when it is tied to the allegations of the complaint and supported by the underlying data used to estimate the amount in controversy. *Id*. at 925–27. Reasonable assumptions are allowed. Defendants' assumptions are not.

Defendants' revised jurisdictional estimate depends on a chain of assumptions, each of which lacks evidentiary support and each of which must be accepted for the model to reach the $5 million threshold. To arrive at their new calculation, Defendants must assume: (1) a class population larger than the insureds tied to the alleged notice-sending entity; (2) that about half of those insureds retained the added driver for at least 184 days; and (3) that the resulting premium increase averaged $2.72 per day. Each step relies on aggregated data drawn from multiple GEICO underwriting entities and from the broader Risk Alert Program rather than the class alleged in this case.

---

action involves **GEICO Casualty**, not **GEICO Advantage**, and therefore concerns a different underwriting entity serving a different population of insureds. *Knowles*, 568 U.S. at 592–93 (amount in controversy must correspond to the class definition). Nor is an allegation in another complaint competent proof of a class-wide damages model. Hertz, 559 U.S. at 96 (jurisdictional facts must be supported by competent proof). There is no allegation or evidence that the wrongs done by **GEICO Casualty** to Kane are representative of the wrongs done by **GEICO Advantage** to the alleged class here. Because Defendants bear the burden to prove the amount in controversy by a preponderance of the evidence, such anecdotal allegations do not carry that burden.

As the preceding sections explain, not one assumption is tied to the relevant population of GEICO Advantage insureds who allegedly had drivers added "without any action taken by the insured." Defendants bear "the burden to show that [their] estimated amount in controversy relied on reasonable assumptions." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Defendants have not shown any of their assumptions are reasonable.

Stacking unsupported assumptions also fails the preponderance standard for a more basic reason. At the evidence-weighing stage, the Court must determine whether the evidence shows it is more likely than not that the jurisdictional threshold is met. *Leflar*, 57 F.4th at 604. When a jurisdictional calculation depends on multiple speculative premises—each of which must be true for the model to reach the threshold—the removing party has not carried that burden. *Smith*, 726 F.2d at 430 (if the evidence is balanced or uncertain, the party with the burden of proof loses).

The problem is compounded by the fact that Defendants have the data needed to calculate the amount in controversy. GEICO's affidavit confirms Defendants can identify the insureds whose policies were affected by the Risk Alert Program and can calculate the resulting premium increases. (Doc. 40-1 ¶¶ 5–7). Yet rather than present that straightforward calculation, Defendants rely on aggregated averages and cross-entity assumptions that do not correspond to the class definition.

Where the removing party holds the relevant data but chooses instead to rely on layered assumptions, the preponderance standard is not satisfied. *Hertz Corp.*, 559 U.S. at 96 (competent proof required); *Brill*, 427 F.3d at 448 (the burden "induces the removing party to come forward with the information" needed to calculate the amount in controversy "accurately").

In short, Defendants' new model reaches the jurisdictional threshold only by stacking assumptions about population, duration, and premium increases that are unsupported and untethered

to the class alleged. That speculative calculation cannot establish—by a preponderance of the evidence—that more than $5 million is actually in controversy. *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 635–36 (8th Cir. 2017). Because Defendants have not carried their burden, the case must be remanded. *Leflar*, 57 F.4th at 603.

7. **If the Court concludes the current record does not resolve jurisdiction in favor of remand, limited discovery is appropriate.**

Defendants argue "jurisdictional discovery is not warranted where GEICO plausibly alleges that the amount in controversy exceeds $5 million." (Doc. 40 at 12). That argument again relies on the wrong step of the CAFA framework as discussed in § 1 above.

Once jurisdiction is challenged, "both sides" must have a fair opportunity to submit proof so the Court may determine, "by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart*, 574 U.S. 89. The Eighth Circuit has emphasized this stage of the inquiry should operate on a "level playing field." *Leflar*, 57 F.4th at 604.

That playing field is not level here. Defendants rely on internal analyses of their policy database to support their jurisdictional assumptions, yet they resist any discovery that would allow Plaintiff to test those assertions. If the Court concludes Defendants' assumptions are sufficiently "reasonable" to be considered at the evidence-weighing stage, the process is fair only if Plaintiff is allowed limited discovery to evaluate the same underlying data.

The relevant calculation is straightforward: the increased premiums paid by the approximately 15,000 insureds who allegedly had a driver added to their policies by GEICO Advantage "pursuant to GEICO's Risk Alert Program 'without any action taken by the insured' … within the past five years." (Doc. 40-1 ¶¶ 5–7). Defendants have the policy and premium records necessary to determine that figure.

Courts recognize that jurisdictional burdens must account for this informational imbalance. When the removing defendant has the key jurisdictional information, the burden should encourage that defendant to produce data to determine jurisdiction accurately. *Brill*, 427 F.3d at 448. Otherwise, a defendant could rely on internal estimates while the plaintiff—who lacks access to the underlying records—would have no practical way to challenge those estimates early in the litigation. *Id*.

That is precisely the situation here. Defendants rely on declarations describing internal analyses of their policy database while simultaneously asserting that producing the underlying information would be burdensome. But if Defendants wish to rely on those internal analyses to establish federal jurisdiction, Plaintiff must be permitted limited discovery sufficient to test the assumptions derived from them.

Nor is Plaintiff's request a "broad" or "sweeping" fishing expedition. Defendants' own declaration now identifies GEICO Advantage as the underwriting entity that issued Plaintiff's policy and states that about 15,000 policies had drivers added without policyholder action. (Doc. 40-1 ¶¶ 5–7). Considering that new information, the only remaining information necessary to resolve the jurisdictional question is the amount of the premium increase because of those driver additions on those policies. Limited discovery directed to that calculation would allow the Court to determine the amount in controversy directly rather than relying on Defendants' assumptions.

The Court should either remand the case on the present record or permit limited jurisdictional discovery sufficient to resolve the amount-in-controversy question. *See Pudlowski v. St. Louis Rams, LLC*, 839 F.3d 963, 964–65 (8th Cir. 2016) (per curiam) ("Discovery is not limited to the merits of a case; 'where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.'")

14

## CONCLUSION

The removing party bears the burden to establish federal jurisdiction. Defendants have not carried it. Instead of presenting the simple calculation their own records would allow, Defendants rely on layered assumptions drawn from aggregated data and unsupported extrapolations. The result is not competent proof but speculation.

CAFA does not allow federal jurisdiction based on speculation. It requires evidence showing the amount in controversy more likely than not exceeds the jurisdictional threshold. Defendants have not made that showing.

The record instead reveals a verifiable way to determine the amount in controversy: the premium increases charged to the approximately 15,000 GEICO Advantage policies at issue. Defendants have those data. Yet they have chosen not to perform the calculation those records would provide.

Because Defendants have not proven more than $5 million is in controversy, the Court should remand this case to the Circuit Court of St. Louis County. If the Court concludes more facts are necessary to resolve the jurisdictional question, it should allow limited jurisdictional discovery directed to the premium increases associated with the 15,000 GEICO Advantage policies.

ONDERLAW, LLC

By:   /s/ Jesse B. Rochman
Martin L. Daesch, #40494
Jesse B. Rochman, #60712
110 E. Lockwood Ave.
St. Louis, MO 63119
(314) 963-9000 (telephone)
(314) 963-1700 (facsimile)
daesch@onderlaw.com
rochman@onderlaw.com
*Attorneys for Plaintiff*

15

**Certificate of Service**

I certify that on March 16, 2026, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all attorneys of record.


*/s/ Jesse B. Rochman*

16