**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| Eric Westerfield,<br><br>        Plaintiff,<br><br>    v.<br><br>Government Employees Insurance Company,<br>GEICO General Insurance Company,<br>GEICO Indemnity Company,<br>GEICO Casualty Company,<br>GEICO Choice Insurance Company,<br>GEICO Secure Insurance Company,<br>GEICO Advantage Insurance Company, and<br>GEICO Marine Insurance Company,<br><br>        Defendants. | Case No. 4:26-cv-00173-SRC |

## DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

## INTRODUCTION

GEICO's Motion provided clear reasons why this Court should dismiss this case (1) in favor of the already pending and nearly identical *Kane* Action,[1] (2) for lack of personal jurisdiction, and (3) for failure to state a claim.  Mr. Westerfield attempts to avoid that result by introducing new facts and making misleading assertions to suggest that this case involves unique concerns under Missouri law.  It does not.  No amount of sleight-of-hand can change the fact that Plaintiff alleges the breach of a Kansas-based insurance agreement by a group of Defendants that he asserts used "shared systems, common underwriting processes, and uniform business practices" to achieve their goal.  As a result, this case involves nearly identical facts to those set forth in the earlier-filed *Kane* Action and, even if it did not, lacks the requisite connection to this forum necessary to satisfy constitutionally mandated due process concerns.  The mere fact that Mr. Westerfield now claims to have moved to Missouri without GEICO's knowledge does not alter that conclusion, particularly where the alleged breach concerns a driver associated with Plaintiff's Kansas residence.  Even if it could, it would not save his claims from the plain language of his insurance agreement that expressly permits GEICO's alleged conduct, nor from the fatal pleading defects that defeat his remaining claims.  In light of each of these issues, as further detailed below, dismissal is warranted.

## ARGUMENT

**I.      This case should be dismissed in favor of the already pending *Kane* Action.**

More than eight months before Mr. Westerfield filed the instant lawsuit, his counsel filed a *nearly identical* nationwide class action lawsuit against one of the defendants in this case in the Middle District of Florida.  That case, which involves overlapping claims and overlapping classes,

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in Defendants' Memorandum of Law in Support of Motion to Dismiss.  ECF No. 46 (the "Motion").

is already in the midst of discovery, with dispositive motion practice set to take place before the end of this year.[2] *See Kane* Action, ECF No. 45. Because the *Kane* Action was filed before the instant action, includes parties whose interests are indisputably aligned (including one of the same defendants), and involves claims and defenses nearly identical to those at issue here (including expressly overlapping class definitions), application of federal courts' well-established "first-to-file" rule is plainly warranted. *Brinker v. Kraft Heinz Foods Co.*, 2024 WL 3638243, at *2–3 (E.D. Mo. Aug. 1, 2024); *HRB Tax Grp., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2012 WL 4363723, at *2–4 (W.D. Mo. Sept. 21, 2012).

In his truncated opposition to Defendants' invocation of the "first-to-file" rule, Mr. Westerfield protests its application by arguing that the two named plaintiffs do not fit into each other's proposed classes, and therefore, "[b]ecause the putative classes do not overlap, the parties do not substantially overlap." Opp. at 1–2. But Plaintiff's argument overlooks, as Defendants explained in their Motion, that his Missouri civil conspiracy class directly overlaps with Mr. Kane's putative nationwide class. *Compare Kane* Compl. ¶ 25 ("All insureds in the United States whom Geico [Casualty] sent a notice automatically adding a driver based on information obtained from a consumer reporting agency and who paid an increased premium after the driver was added by Geico without any action taken by the insured."), *with* Pet. ¶ 70 ("All insureds who: (a) GEICO [including but not limited to GEICO Casualty] sent a document stating it would add a driver based on information obtained from a third-party source showing a Missouri address; and (b) who paid an increased premium after the driver was added by GEICO without

---

[2] On May 22, 2025, GEICO moved to dismiss the plaintiff's claims in the *Kane* Action. *See* Kane Action, ECF No. 14. Save for discussion of the "first to file" rule, personal jurisdiction, and civil conspiracy, GEICO's motion to dismiss in the *Kane* Action (and the plaintiff's opposition) is nearly identical to that filed before this Court. As of the date of the instant filing, GEICO's motion remains pending.

any action taken by the insured."). Put simply, were the court in the *Kane* Action to certify Mr. Kane's proposed nationwide class—which Defendants continue to believe would be inappropriate—such class would, by definition, subsume any GEICO Casualty insureds in Plaintiff's Missouri civil conspiracy class. This sort of class overlap is precisely what courts applying the "first-to-file" rule are aiming to avoid. *Wright v. Walden Univ., LLC*, 2017 WL 1435717, at *2 (D. Minn. Apr. 21, 2017) (applying first-to-file rule where there is "risk [of] binding class members to inconsistent judgments"); *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 791 (6th Cir. 2016) ("[I]f duplicative class actions were allowed to proceed unabated, the class members could be subject to inconsistent rulings.").

In any event, GEICO's Motion explained that the mere fact that there is not perfect overlap across classes does not defeat application of the "first-to-file" rule. *Mishkin v. Volkswagen Grp. of Am., Inc.*, 2022 WL 18664851, at *2 (E.D. Mo. Oct. 11, 2022) (applying rule "when the parties in the two actions 'substantial[ly] overlap,' even if they are not perfectly identical"). To the contrary, courts still apply the "first-to-file" rule even with mutually exclusive classes where, as here, the claims in both lawsuits are nearly identical and the parties' interests are plainly aligned. *See General Committee of Adjustment GO-386 v. Burlington N. R.R.*, 895 F. Supp. 249, 252 (E.D. Mo. 1995); *Cadenasso v. Metro. Life Ins. Co.*, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014) (applying rule to cases with "nearly identical issues," even though "classes [were] mutually exclusive"). Because both sides' interests are directly aligned across the two cases at issue—as explained at length in Defendants' Motion (Mot. at 6–7) and left largely unaddressed in Plaintiff's opposition—there can be no doubt that application of the "first-to-file" rule is warranted.

As a last defense, Mr. Westerfield attempts to claim that GEICO's "first-to-file" argument "improperly collapses distinct GEICO entities and their conduct into a single 'practice.'" Opp.

at 2.  But Plaintiff ignores the fact that Defendants are merely responding to *Plaintiff's own allegations* that GEICO's "**unified systems and practices result in identical policy forms and identical operational practices across all GEICO entities, including the automatic addition of drivers based on third-party data**."  Pet. ¶ 23 (emphasis added); *see also, e.g.*, *id.* ¶¶ 27 ("GEICO's marketing, underwriting, driver-data collection, and claims administration are conducted through unified nationwide systems, giving rise to consistent practices across all GEICO-branded underwriting companies."), 64 ("Each GEICO entity sends or participates in the sending of these SCAM Threats through GEICO's centralized underwriting systems, and each GEICO entity increases premiums through the same shared SCAM workflow.").  Plaintiff cannot now shift course to argue that, because one case centers on GEICO Advantage while the other case centers on GEICO Casualty Company, the two cases involve "separate wrongful conduct" and warrant disparate treatment.[3]  Because all three factors of the "first-to-file" rule clearly weigh toward its application, dismissal in favor of the already-pending *Kane* Action is warranted.

## II.     Plaintiff's claims should be dismissed for lack of personal jurisdiction.

The vast majority of ink spilled in Plaintiff's opposition is dedicated to his assertion that, by virtue of having purportedly moved from Kansas to Missouri in April 2024, this Court has specific jurisdiction over his claims against GEICO.  But no amount of hand waving can hide the fact that the insurance agreement at issue, by its terms, is a Kansas insurance agreement intended to insure persons and property located within the State of Kansas.  In that way it is expressly

---

[3] Plaintiff's citation to *Ritchie* is entirely unavailing.  Opp. at 2 (citing *Ritchie Capital Mgmt., L.L.C. v. Kelley,* 785 F.3d 273, 281–82 (8th Cir. 2015)).  At the outset, that case **did not** apply, reject, or even consider the "first-to-file" rule.  But even considering *Ritchie* on the merits, the facts are entirely distinguishable, as, unlike here, the two defendants in *Ritchie* engaged in distinct wrongful conduct under bankruptcy law, not conduct that Plaintiff alleges took place by a "unified enterprise" using "unified systems" and "identical operational practices . . . , including the automatic addition of drivers based on third-party data."  *Compare* 785 F.3d at 281–82, *with* Pet. ¶¶ 23, 61, 64.

governed by the laws and insurance regulations of the State of Kansas and, as such, falls outside the purview of Missouri's long-arm statute. And even were that not the case, Mr. Westerfield notably excludes from his opposition any assertion that he actually *informed* GEICO of his claimed move to Missouri; to the contrary, as evidenced from the face of the agreement itself, at all times GEICO understood Mr. Westerfield to reside and his insured vehicles to be located within Kansas. Because GEICO did not know that Mr. Westerfield lived in Missouri, it had no reason to believe that it could be haled into court in Missouri by Mr. Westerfield. As a result, litigating Mr. Westerfield's claims in this forum would run afoul of well-established due process considerations. For each of these reasons, Plaintiff's claims should be dismissed for lack of personal jurisdiction.

Nowhere in his opposition does Plaintiff contest his failure to plead facts sufficient to support a showing of general jurisdiction against GEICO. *See* Mot. at 8–9. As a result, to pursue his claims, Mr. Westerfield bears the burden of establishing that specific jurisdiction over GEICO is both "authorized by the forum state's long-arm statute and permitted by the Due Process Clause." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011); *Warren v. Cardoza Pub., Inc.*, 2011 WL 6010758, at *2 (E.D. Mo. Dec. 2, 2011) ("The Eighth Circuit Court of Appeals suggests the due process and long arm statute inquiries should be analyzed separately."). Mr. Westerfield cannot make either showing.

As detailed in Defendants' Motion, Missouri's long-arm statute permits jurisdiction over causes of action arising from "[t]he contracting to insure any person, property or risk located within this state at the time of contracting." Mo. Rev. Stat. § 506.500. Here, the contract at issue is unambiguously intended to insure persons, property, and risks located in the State of *Kansas* at the time of contracting. *See* ECF No. 46-3 (identifying Mr. Westerfield's address and "Vehicle Location[s]" to be in Gardner, Kansas). In fact, GEICO's Kansas Family Automobile Insurance

5

Policy is inherently unique to Kansas, as it uses a form approved by Kansas regulators, expressly calls for the application of Kansas law, and includes language specific to the State of Kansas. *See* ECF No. 52-4 at 18 ("The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of Kansas.").[4] Because Mr. Westerfield's allegations stem solely from this Kansas-based insurance agreement, they fall outside the bounds of Missouri's long-arm statute and cannot sustain a finding of specific jurisdiction. *See National Indemnity Co. v. Pierce Waste Oil Service, Inc.*, 740 F. Supp. 721, 724 (E.D. Mo. 1990) (dismissing claims for lack of specific jurisdiction where "the parties' respective rights and the universe of plaintiffs' liability were established when they entered into a contract for insurance in Illinois").[5]

But even assuming, *arguendo*, that Mr. Westerfield could shoehorn his claims into one of the provisions of Missouri's long-arm statute, his claims would still run afoul of clear due process considerations, which require that "[a] defendant's contacts with the forum state [] be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." *Warren*, 2011 WL 6010758, at *2. Critically, "[i]n order to reasonably anticipate being haled into court in

---

[4] *See also, e.g.*, *id.* at 5 (noting certain exclusions that "only appl[y] to damages in excess of the minimum financial responsibility limits for the state of Kansas"), 18 ("Any terms of this policy in conflict with the statutes of Kansas are amended to conform to those statutes."), 18 (limiting "Insured Autos" to those the insured is "required or ha[s] elected to maintain security required under the Kansas Automobile Injury Reparations Act"), 20 ("If the Kansas Comparative Negligence Law applies, our right of subrogation shall be reduced by the percentage of negligence attributable to the injured person.").

[5] In opposition, Mr. Westerfield attempts to cite to other subsections of Missouri's long-arm statute to establish jurisdiction, but none are able to save his claim. Indeed, because the Policy was unambiguously intended to insure persons and property in Kansas and Mr. Westerfield failed to notify GEICO of his alleged change in residence, as detailed below, GEICO cannot be said to have transacted business in Missouri within the meaning of Missouri's long-arm statute. *See Gateway Clippers Holdings LLC v. Main St. Am. Prot. Ins. Co.*, 2021 WL 4168202, at *5–6, 8 (E.D. Mo. Sept. 14, 2021) (rejecting jurisdiction under Missouri's long-arm statute where "the Policy covered activities and efforts which the parties intended to occur outside of Missouri" notwithstanding the fact that the "employee made the decision in Missouri to accept the policy"); *see also National Indemnity*, 740 F. Supp. at 724 (similar).

Missouri, Defendants must have, through their conduct, ***purposefully availed*** themselves of Missouri law." *Id.* at \*5 (emphasis added). Here, where the contract and correspondence at issue plainly establish Defendants' lack of knowledge of Mr. Westerfield's alleged move to Missouri, due process requires dismissal of Plaintiff's claims.

Plaintiff's brief and accompanying declaration are careful to avoid any explicit allegation that GEICO *knew of* Mr. Westerfield's purported relocation to Missouri or that it purposefully directed communications to him in Missouri.[6] Instead, Mr. Westerfield asserts only that: (1) he moved to Missouri in April 2024; (2) he "submitted a permanent-change-of-address request with the United States Postal Service"; and (3) GEICO allegedly "purposefully" took certain actions "while [he] resided in Missouri." *See* ECF No. 52-1 ¶¶ 2–8. Mr. Westerfield then makes the impermissible logical leap to conclude that GEICO "purposefully" targeted the State of Missouri through its conduct. But Mr. Westerfield's argument is undone by the express language of the contract at issue, which explicitly identifies Mr. Westerfield's address and "Vehicle Location[s]" to be in Gardner, Kansas. *See* ECF No. 46-3. In this way, the agreement expressly evidences GEICO's understanding that Mr. Westerfield and his vehicles were located in Kansas at the time of the alleged conduct and directly refutes any claim that GEICO "purposefully availed" itself of Missouri law by contracting with Mr. Westerfield. *See* ECF No. 46-3. The mere fact that Mr.

---

[6] Mr. Westerfield's opposition asserts that GEICO corresponded with him while he was a Missouri resident, thereby implying that GEICO directed that correspondence to Missouri. Opp. at 4. But at no point does Plaintiff state that GEICO sent any correspondence *directly to* his Missouri residence. To the contrary, and consistent with Mr. Westerfield's declaration, GEICO would have either communicated with Mr. Westerfield (1) electronically, or (2) via mail sent to his Kansas residence that was later forwarded to Missouri as a result of his "permanent-change-of-address request with the United States Postal Service." ECF No. 52-1 ¶¶ 3, 12. In any event, "[b]ecause any subsequent activities by defendants in Missouri could in no way enlarge the parties' contractual rights or the defined realm of plaintiffs' liability, this cause of action could not have arisen in Missouri." *National Indemnity,* 740 F. Supp. at 724.

Westerfield surreptitiously relocated to Missouri does nothing to alter that calculus.  *See, e.g.*, *Warren*, 2011 WL 6010758, at \*7 (finding no purposeful availment where "Defendants had no indication whatsoever that they were entering into a contract with any connection at all to Missouri"); *Bellisio Foods, Inc. v. Prodo Pak Corp.*, 2008 WL 4867352, at \*7 (D. Minn. Nov. 4, 2008) ("One does not purposefully avail oneself of the privilege of doing business in Minnesota by negotiating a contract with someone who is secretly a Minnesota resident."); *Allan G. Holms, Inc. v. Mraz*, 2006 WL 2506044, at \*3–4 (D. Mont. Aug. 28, 2006) (finding no personal jurisdiction where "Plaintiffs have not alleged or shown that the Defendants even knew, or had reason to know, that they were contracting with a Montana corporation").

To bolster his argument, Plaintiff attempts to highlight certain actions allegedly taken by GEICO involving *other insureds* who reside in Missouri, arguing that, as a result, GEICO "purposeful[ly] avail[ed]" itself of Missouri.  Opp. at 4, 6.  But Plaintiff ignores that GEICO's alleged "purposeful availment" must relate *specifically* to his individual claims.  *See Lizama v. H&M Hennes & Mauritz LP*, 2023 WL 3433957, at \*2 (E.D. Mo. May 12, 2023) (dismissing claims of named plaintiff who lacked sufficient "connection[s] to Missouri" and explaining that personal jurisdiction over claims of "absent class members" was insufficient); *Lizama v. Venus Lab'ys, Inc.*, 679 F. Supp. 3d 848, 856 (E.D. Mo. 2023) ("[T]he fact that there is specific jurisdiction over Plaintiff Lizama's claims does not confer specific personal jurisdiction over other claims with no connections to Missouri.").  Indeed, while it may be true that Missouri has a hypothetical interest in a hypothetical plaintiff's claim arising out of GEICO's contacts with that insured in Missouri, Missouri *lacks* an interest in adjudicating *Plaintiff's* claims against GEICO, which all arise out of *Kansas* conduct and a *Kansas* agreement.  In fact, the nucleus of Plaintiff's claims—his allegations that GEICO "wrongfully added" a driver to his policy—is *necessarily*

8

*specific* to Kansas, as the driver at issue was added to Mr. Westerfield's policy based on information showing that the driver resided at Mr. Westerfield's *Kansas* address. *See* ECF Nos. 46-2 (explaining that GEICO identified a driver who "may be a licensed or permitted driver with *your address listed as their primary address*" (emphasis added)) and 46-3 (updating Mr. Westerfield's Kansas policy to include that driver at Mr. Westerfield's *Kansas* residence). Put simply, to the extent any state has an interest in resolving the instant dispute, that state is Kansas.

At bottom, while Mr. Westerfield boldly claims that "GEICO did not merely insure a Kansas risk that happened to move" (Opp. at 5), that is precisely what happened. GEICO insured Mr. Westerfield at his Kansas residence for vehicles located in Kansas. GEICO then identified a driver residing at Mr. Westerfield's Kansas address that it believed should be added to his policy. Mr. Westerfield now alleges that such conduct is impermissible under the terms of his Kansas policy. As a result, his claims plainly fall under the purview of courts located in Kansas, not here.

## III.   Plaintiff's Petition fails to state a claim upon which relief can be granted.

### a.   Because Mr. Westerfield's insurance agreement expressly authorizes the conduct allegedly at issue, each of his four claims is subject to dismissal.

As detailed in GEICO's Motion, all four of Mr. Westerfield's claims collapse upon scrutiny of the Policy language, which expressly permits the exact conduct about which Mr. Westerfield now complains. Specifically, Mr. Westerfield's insurance agreement explains that his premiums are "based on the information [GEICO has] in [his] file" and expressly authorizes GEICO to "adjust [those] premiums during the policy term if any of [the information in GEICO's file] . . . is incorrect, incomplete or changed." Policy at 27–28. To ensure that such information remains accurate, the Policy builds in a contractual obligation for insureds to "cooperate with [GEICO] in determining if [the information it has in its files] is correct and complete." Pet. ¶ 83; Policy at 27–28. At all times, GEICO acted in accordance with this language when it identified a youthful

driver residing at Mr. Westerfield's Kansas residence, requested Mr. Westerfield's cooperation in determining whether that information was correct, and adjusted Mr. Westerfield's premiums when Mr. Westerfield indisputably failed to respond.  Because GEICO's conduct is expressly permitted by the Policy language, each of Mr. Westerfield's claims for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and civil conspiracy must fail. *See AIDS Healthcare Found. v. Express Scripts, Inc.*, 658 F. Supp. 3d 693, 703–04 (E.D. Mo. 2023) (dismissing breach of contract and implied covenant claims where "the contract expressly permits the actions being challenged"); *Blair v. City of Hannibal*, 179 F. Supp. 3d 901, 911 (E.D. Mo. 2016) ("[I]f no injustice results from the defendant's retention of the benefit, then no cause of action for unjust enrichment will lie."); *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 586 (Mo. Ct. App. 2008) ("If the underlying wrongful act alleged as part of a civil conspiracy fails to state a cause of action, the civil conspiracy claim fails as well.").

In opposition, Mr. Westerfield all but concedes this fact, admitting that Section V of the Policy does, in fact, permit GEICO to make premium adjustments during the policy term.  Opp. at 11.  According to Mr. Westerfield, however, "Section V applies only when underlying information is *actually* incorrect, incomplete, or changed."  Opp. at 11 (emphasis in original).  But Mr. Westerfield's argument finds no support in the Policy language.  To the contrary, Section V explicitly states that an insured's "premium for each auto is based on the information [GEICO has] in [the insured's] file" and that GEICO "may adjust [the insured's] premiums during the policy term *if any of this information* . . . is incorrect, incomplete or *changed*."  Policy at 27–28 (emphasis added).  In other words, if "the information [GEICO has] in [the insured's file] . . . change[s]," GEICO is expressly permitted to "adjust [the insured's] premiums during the policy term." *Id.*  That is precisely what Mr. Westerfield has alleged here.

10

The fact that the information in an insured's file may not be accurate—for example, where GEICO believes that an insured resides in Kansas when they have actually moved to Missouri—is precisely why the Policy builds in an express obligation for insureds to "cooperate with [GEICO] in determining if this information is correct and complete." *Id*.  Importantly, GEICO is not arguing, as Mr. Westerfield suggests, that it was authorized to increase Mr. Westerfield's premiums as a *penalty* for his failure to cooperate; rather, GEICO was permitted to adjust Mr. Westerfield's premiums based on changes to the relevant information that it had in its files.  To the extent that such information was incorrect, the obligation falls on Mr. Westerfield to cooperate with GEICO to correct such information.  Because he indisputably did not do so, GEICO was expressly authorized to update his premiums during the policy term, thereby defeating Plaintiff's claims.

As a final attempt to circumvent the express language of the Policy, Mr. Westerfield offers a parade of horribles to argue that, absent affirmative consent by the insured, GEICO could manufacture facts (*e.g.*, that "Elvis Presley (the American singer) now lives in your household," Opp. at 12) and artificially inflate an insured's premiums.  But even ignoring an insured's contractual authority (and GEICO's offer) to cooperate and simply correct such information, Plaintiff's hypothetical is directly refuted by Mr. Westerfield's own allegations, which concede that the information upon which GEICO relied to modify his policy information was obtained through third-party consumer reporting agencies.  *See* Pet. ¶ 34; *see also* ECF No. 46-2 ("We are reaching out to you based on information obtained from a consumer reporting agency."); Opp. at 5 ("By using Missouri Department of Revenue ('MDOR') data to identify and rate drivers and

11

'supplement policy information to its insureds . . .' Defendants affirmatively engage with Missouri's governmental infrastructure to conduct their business." (citation omitted)).[7]

If anything, it is Plaintiff's reading of the Policy that leads to unreasonable results. Under his interpretation, GEICO would be permitted to adjust an insured's premiums only after the insured *affirmatively confirms* that the information GEICO received from a state department of motor vehicles is correct. Insureds would therefore have the perverse incentive to withhold or delay confirmation to avoid an increase in premiums, despite receiving the benefit of an increase in coverage. For example, under Plaintiff's reading, an insured convicted for driving under the influence could avoid a change in rates or coverage simply by refusing to cooperate or discuss the conviction with GEICO. That cannot be correct. Put simply, Mr. Westerfield's argument impermissibly reads out of Section V GEICO's express ability to adjust insureds' premiums based on changes to the information it has in its files. As a result, Plaintiff's reading is not sustainable as a matter of law. *See Safeco Ins. Co. of Illinois v. Palazzolo*, 481 F. Supp. 3d 921, 928 (E.D. Mo. 2020) ("Courts must 'endeavor to give each provision a reasonable meaning and to avoid an interpretation that renders some provisions useless or redundant.'"); *State ex rel. Blue Springs Sch. Dist. v. Grate*, 576 S.W.3d 262, 271 (Mo. Ct. App. 2019) ("We aim to give a reasonable meaning to every provision of an insurance policy and to avoid an interpretation that renders some provisions trivial or superfluous.").

### b. Mr. Westerfield's implied covenant claim independently fails because it is duplicative of his breach of contract claim.

Even assuming that Mr. Westerfield's claim for breach of the implied covenant of good faith and fair dealing could survive the express contractual language permitting GEICO's

---

[7] Indeed, as detailed in Allison Hoskins's February 4, 2026 Declaration in support of Defendants' Notice of Removal, GEICO's vendor sources its information directly from each state's respective Department of Motor Vehicles or equivalent agency. ECF No. 1-2 ¶ 2.

conduct—which it cannot—it would independently be subject to dismissal as duplicative of his breach of contract claim. *See* Mot. at 13–14. To avoid this result, Mr. Westerfield argues broadly in his opposition that implied covenant claims are not inherently duplicative of breach of contract claims. While this is true as a general proposition, it does not hold where, as here, a plaintiff's allegations "amount to just another way the contract was breached." *Cafe Agave, Inc. v. Crown Valley Winery, Inc.*, 2023 WL 4623057, at *5 (E.D. Mo. July 19, 2023). To the contrary, Mr. Westerfield's claims must rest on different facts distinct from those underlying his breach of contract claim. *Earley v. Wachovia Bank, Nat'l Ass'n*, 2009 WL 10702522, at *5 (W.D. Mo. Feb. 26, 2009). Because the core of Mr. Westerfield's implied covenant claim is the allegation that GEICO wrongfully inflated his premiums by adding a driver to his insurance policy, which is precisely the same conduct and theory that underlies his breach of contract claim such that proof of one would necessarily prove the other, his implied covenant claim is duplicative of his breach of contract claim and therefore subject to dismissal.[8]

### c. Mr. Westerfield's unjust enrichment claim independently fails because it is inconsistent with his breach of contract claim.

In this same way, Mr. Westerfield's unjust enrichment claim is incompatible with his breach of contract claim. As detailed in GEICO's Motion, where "a plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, unjust enrichment does not apply." *Affordable Communities of Missouri v. Fed. Nat. Mortg. Ass'n*, 714 F.3d 1069, 1077 (8th Cir. 2013). In short, "[t]here can be no unjust enrichment claim . . . where an express contract

---

[8] Mr. Westerfield attempts to spin his implied covenant claim to argue that "[e]ven if GEICO had discretion to adjust premiums, it could not use that discretion to fabricate underwriting inputs and extract payments for risks never assumed." Opp. at 14. But Plaintiff's argument is entirely circular and is no more than a rephrasing of his argument that GEICO charged him more than what was contractually owed. In that way, it is not "extracontractual," but merely "amount[s] to just another way the contract was breached." *Cafe Agave*, 2023 WL 4623057, at *5.

exists." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014).  Mr. Westerfield protests application of this black letter rule of law by claiming that it "does not apply when the challenged conduct falls outside the contract's scope."  Opp. at 14.  But Mr. Westerfield is unable to point to allegations of any right, duty, or obligation beyond the four corners of the parties' agreement.  To the contrary, like Mr. Westerfield's implied covenant claim, his unjust enrichment claim amounts to nothing more than the allegation that Defendants breached his insurance contract by charging more in premiums than contractually permitted.  As such, because an express agreement exists governing the entirety of the parties' relationship, Mr. Westerfield's unjust enrichment claim is inconsistent with his breach of contract claim and should be dismissed.[9]

### d. Mr. Westerfield's civil conspiracy claim is independently subject to dismissal pursuant to the intracorporate conspiracy doctrine.

Mr. Westerfield's civil conspiracy claim fares no better.  As explained in Defendants' Motion, even assuming, *arguendo*, that Mr. Westerfield could allege a wrongful act sufficient to sustain a civil conspiracy claim—which he cannot, as detailed above—his claim should still be dismissed, as affiliated entities cannot conspire with one another as a matter of law.  *Allied Servs., LLC v. Smash My Trash, LLC*, 2024 WL 2842633, at *46 (W.D. Mo. May 16, 2024) ("[T]wo or more 'sister' or affiliated companies, when pursuing their 'common interests,' 'cannot conspire.'"); *Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995) ("[T]wo subsidiaries of the same parent cannot conspire."); *SBFO Operator No. 3, LLC v. Onex Corp.*, 663 F. Supp. 3d 990, 1013 (E.D. Mo. 2023) (granting dismissal "because there can

---

[9] Mr. Westerfield also argues that because "[f]ederal pleading rules allow alternative theories . . . [he] may pursue unjust enrichment if GEICO's conduct is found non-contractual."  Opp. at 14. But Plaintiff's argument proves too much, as if it were correct, it would necessarily hold true in *every case* that includes both a breach of contract and unjust enrichment claim, thereby swallowing the rule entirely.  That cannot be the case.

be no conspiracy within [Defendants'] corporate family"), *aff'd*, 101 F.4th 551 (8th Cir. 2024). In protest, Mr. Westerfield argues that Defendants' position is "premature" because "Plaintiff does not allege Defendants are affiliates or are subsidiaries of the same parent." Opp. at 15. But Plaintiff once again ignores his own pleadings, in which he concedes that Defendants are, in fact, affiliates of one another. *See, e.g.*, Pet. ¶ 28 (detailing organizational structure of Defendants). In any event, this Court may take judicial notice of the ownership structure of Defendants, as set forth in their corporate disclosure statements and otherwise available in the public record. *See, e.g.*, *Laborers Pension Fund v. Blackmore Sewer Const., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of corporate structure where "ownership of [defendants] [wa]s a matter of public record" and could be confirmed by "a simple phone call or a quick search of the Internet").

As a last resort, Plaintiff argues that "even if he did [allege that Defendants are affiliates], Missouri allows conspiracy claims against a parent and its wholly-owned subsidiary." Opp. at 15 (citing *McMullin v. Community Sav. Service*, 762 S.W.2d 462 (Mo. Ct. App. 1988)). But the sole case cited by Mr. Westerfield in support of this proposition is far afield, as the court in *McMullin* did not, in any way, consider the application of the intracorporate conspiracy doctrine, but rather considered only whether the plaintiffs had "merely pled legal conclusions not based on any fact." 762 S.W.2d at 465. It therefore cannot override the direct precedent cited in Defendants' Motion precluding civil conspiracy claims brought against corporate affiliates.[10]

---

[10] Plaintiff's footnoted argument that Defendants' cases are limited to the antitrust context (Opp. at 15 n.8) ignores the many courts, including the Eighth Circuit, to have applied the doctrine in breach of contract and tort actions. *See, e.g.*, *Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 871 (8th Cir. 1995) (holding that sister companies could not conspire to commit tortious interference); *Di-Hed Yokes, Inc. v. IMAS Dell'Orto of Am., Inc.*, 2006 WL 8443504, at *3–4 (D. Minn. Aug. 30, 2006) (applying doctrine in breach of contract context because *Copperweld* extends to "civil conspiracy claims in general"); *i-Sys., Inc. v. Softwares, Inc.*, 2004 WL 742082, at *18 (D. Minn. Mar. 29, 2004).

15

## CONCLUSION

For these reasons and those set forth in GEICO's Motion, GEICO respectfully requests that the Court dismiss Mr. Westerfield's claims: (1) in favor of the earlier-filed *Kane* Action; (2) for lack of personal jurisdiction; or (3) for failure to state a claim.

Date:  April 3, 2026

Respectfully submitted,

/s/ George E. Mastoris
George E. Mastoris (*pro hac vice*)
Adam P. Moskowitz (*pro hac vice*)
**WINSTON & STRAWN LLP**
200 Park Ave.
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
gmastoris@winston.com
apmoskowitz@winston.com

/s/ Samantha Lerner
Samantha Lerner (*pro hac vice*)
**WINSTON & STRAWN LLP**
300 N. LaSalle Drive
Chicago, IL 60654
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
slerner@winston.com

/s/ W. Jason Rankin
W. Jason Rankin #626724
Charles Insler, #58623
Emilee M. Bramstedt, #71802
701 Market St., Ste. 1400
St. Louis, MO 63101
314-241-6160
wjr@heplerbroom.com
cni@heplerbroom.com
emb@heplerbroom.com

*Counsel for Defendants*
*Government Employees Insurance Company,*
*GEICO General Insurance Company,*
*GEICO Indemnity Company,*
*GEICO Casualty Company,*
*GEICO Choice Insurance Company,*
*GEICO Secure Insurance Company,*
*GEICO Advantage Insurance Company, and*
*GEICO Marine Insurance Company*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Reply Memorandum of Law in Support of Motion to Dismiss was filed electronically on April 3, 2026, and served by operation of the Court's electronic filing system upon all attorneys of record.

/s/ George E. Mastoris

*Counsel for Defendants*
*Government Employees Insurance Company,*
*GEICO General Insurance Company,*
*GEICO Indemnity Company,*
*GEICO Casualty Company,*
*GEICO Choice Insurance Company,*
*GEICO Secure Insurance Company,*
*GEICO Advantage Insurance Company, and*
*GEICO Marine Insurance Company*