Docusign Envelope ID: E3FACAB2-C92E-489C-9BAA-3318818CA8D9.

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ALLISON KANE, *individually,*
*as Personal Representative of the*
*Estate of Richard Kane, and for*
*all others similarly situated,*

      Plaintiff,

v.                                                                      Case No. 6:25-CV-532-JSS-LHP

GEICO CASUALTY COMPANY,

      Defendant.

_____/

## GEICO CASUALTY COMPANY'S VERIFIED OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendant GEICO CASUALTY COMPANY ("*GEICO*" or "*Defendant*") objects and responds to the First Set of Interrogatories by Plaintiff ALLISON KANE, individually and as Personal Representative of the Estate of Richard Kane ("*Kane*" or "*Plaintiff*"),[1] as follows:

---

[1] The First Set of Interrogatories was initially served by Plaintiff Richard Kane on Geico General Insurance Company. Since then, the operative complaint in the above-captioned proceeding has been amended twice by interlineation, substituting Allison Kane in her individual capacity and capacity as Personal Representative of the Estate of Richard Kane as named Plaintiff and GEICO Casualty Company as Defendant.  As such, these objections and responses are to be construed as being on behalf of GEICO Casualty Company, only, in response to First Set of Interrogatories by Allison Kane in her individual capacity and capacity as Personal Representative of the Estate of Richard Kane.

1

Sensitivity: Highly Confidential and Proprietary

data management systems, and that review would need to be repeated anew for each individual putative class member, which would be extremely burdensome. Additionally, many of these policyholders suffered no injury because either the undisclosed youthful driver was properly added as a member of the customer's household, or the policyholder received a refund or credit after providing GEICO with information regarding the youthful driver. Therefore, such policyholders would not be members of any putative class, assuming such a class could ever be certified. Identifying premium changes also potentially involves assumptions about the causes of those changes, which risks inaccuracies and reliance on incomplete data. However, generally, the addition of a youthful driver results in a premium increase, though other simultaneous policy or rating adjustments may offset, reduce, or increase the overall premium impact.

**10.    Identify the average and median premium increase amounts resulting from automatic driver additions (nationwide and by state). The relevant period for this interrogatory is five years.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of the undefined and misleading term "automatic driver additions." GEICO further objects on the grounds that it is based on a fundamentally incorrect and misleading premise. GEICO does not engage in any practice of adding drivers without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information. In addition, GEICO incorporates by reference its general objections regarding the national class, including that requests for nationwide information are overly broad, unduly burdensome, and disproportionate at this stage of the litigation. GEICO also objects to this interrogatory as unduly burdensome and not proportional to the needs of the case,

13

as it seeks information that is not maintained in the ordinary course of business. Calculating specific premium increases for a particular policyholder would require a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member, which would be extraordinarily time-consuming, resource-intensive, and impractical. Even if such a manual review were conducted, determining the amount a premium increased following the addition of a youthful driver may necessitate making assumptions about the cause of the premium change, which would result in inaccurate, speculative, or incomplete data. Furthermore, the vast majority of policyholders who would be subject to such a review sustained no injury and therefore would not qualify as members of any putative class, assuming such a class could be certified.

Finally, even if GEICO could accurately calculate average or median premium increases, those figures are irrelevant to any claim or defense. They cannot establish whether any given policyholder has a meritorious claim because they reveal nothing about whether a youthful driver was properly added to a particular policy or, if not, how long that individual remained on the policy and whether the policyholder later received a refund or credit after the individual was removed. Those are individualized, fact-intensive inquiries that defeat predominance. And for the same reason, average and median figures are irrelevant to damages. Even where a policyholder could establish liability, any recovery would be limited to the actual amount that policyholder's premium increased—not the average or median—which can be determined only through an individualized review of that policyholder's circumstances.

Sensitivity: Highly Confidential and Proprietary

Subject to and without waiving these objections, GEICO states that the response to this interrogatory is duplicative of the responses to interrogatories fourteen and fifteen refers Plaintiff to its responses to those interrogatories.

**17.    Describe how insureds within the class definition can be identified from GEICO's records, including what databases, data fields, or reporting tools would allow identification of insureds who (i) received an Auto Driver Notice, (ii) had a driver added without taking action, and (iii) paid an increased premium as a result.**

RESPONSE: GEICO objects to this interrogatory as vague and ambiguous in its use of undefined and misleading terminology, including the phrase "Auto Driver Notice." GEICO also objects to this interrogatory as vague and ambiguous in its use of the undefined and misleading phrase "driver added without taking action." This is based on a fundamentally incorrect and misleading premise. GEICO does not engage in any practice of adding drivers without first notifying the insured and providing an opportunity to respond, clarify, or dispute the information.

Additionally, GEICO objects to this interrogatory to the extent it assumes the propriety or clarity of the "class definition," which is vague, overbroad, and not amenable to objective identification from GEICO's records. The proposed definitions rely on imprecise and factually inaccurate terms such as "automatically" and "without any action taken by the insured," which ignore the 15-day response window and fail to exclude insureds who affirmatively or knowingly accepted an added driver. The definitions also improperly include insureds who suffered no harm and contain no temporal limitation, rendering them facially overinclusive.

21

Sensitivity: Highly Confidential and Proprietary

GEICO further objects to this interrogatory as compound, overly broad, and vague, as it combines multiple distinct inquiries into a single interrogatory, making the scope unclear and the burden disproportionate to the needs of the case.

Subject to and without waiving these objections, GEICO states that it provides address and policyholder data to Explore, which returns a spreadsheet identifying youthful drivers with state DMV records showing them residing at policyholder addresses. GEICO reviews this data internally to exclude certain matches and then issues a Risk Alert Notice to the remaining policyholders. While those spreadsheets may indicate how many policyholders received a Risk Alert Notice regarding an undisclosed youthful driver, GEICO does not, in the ordinary course of business, maintain a specific list indicating policyholders who experienced a premium increase following receipt of a Risk Alert Notice and the subsequent addition of the undisclosed driver to their policy. Providing this information would necessitate a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member, when the vast majority of policyholders suffered no injury and would not be members of any putative class, assuming a class could ever be certified. Additionally, confirming that any premium increase specifically resulted from this addition could require making assumptions about the causes of premium changes, risking inaccuracies, speculation, and incomplete data.

22

## VERIFICATION

Under penalties of perjury, I, <u>Allison Hoskins</u>, declare that I have read the foregoing Answers to Plaintiff's First Set of Interrogatories and that the facts stated are true and correct to the best of my knowledge and belief.

Executed this <u>6</u> day of <u>April</u>, 2026

GEICO CASUALTY COMPANY

DocuSigned by:

*allison Hoskins*

E7465747F4C2491...

By: _____

Print Name: <u>Allison Hoskins</u>

Title: <u>Senior Manager, Underwriting Efficiency</u>

Sensitivity: Highly Confidential and Proprietary