UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ERIC WESTERFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-00173-SRC |
| | ) | |
| GOVERNMENT EMPLOYEES | ) | |
| INSURANCE COMPANY et al., | ) | |
| | ) | |
| Defendants. | ) | |

## Memorandum and Order

Eric Westerfield sued several GEICO entities in state court, individually and on behalf of three putative classes, arguing that they engaged in a deceptive practice dubbed "SCAM" or **S**ilence-**C**onstructed **A**ddition **M**echanism. The purported SCAM: GEICO allegedly added an unknown driver onto Westerfield's policy for a period of time, without his consent, resulting in a higher insurance premium. GEICO removed this action to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Westerfield moved to remand and GEICO moved to dismiss. For the following reasons, the Court denies Westerfield's motion to remand and grants GEICO's motion to dismiss.

## I.      Factual background

The Court accepts the following well-pleaded facts as true. Westerfield "was a named insured under one or more automobile insurance policies issued by one or more GEICO-branded underwriting companies." Doc. 20 at ¶ 29. Defendants—collectively referred to as "GEICO" in Westerfield's complaint, *see id.* at 1 (The Court cites to page numbers as assigned by CM/ECF.) (A "petition" in Missouri state court serves as the analogue of a federal "complaint," and the Court uses the latter term.)—"purportedly sent an email and/or letter speculating [that] someone

not listed on the policy as a named insured or additional driver '*may* be a licensed or permitted driver with your address listed as their primary address,'" *id.* at ¶ 30; *see* docs. 19-9–19-10 (attaching an example of the letter and email that Defendants sent to insureds); *see also* doc. 48-1 (attaching the email that Defendants sent to Westerfield).

Westerfield asserts that he "did (and does not) know the driver" identified by GEICO, and "no one by that name resides with [him]." Doc. 20 at ¶ 32. GEICO sent him an email noting that if he took no action, it would add the driver to his policy. *Id.* at ¶ 31; doc. 48-1 at 2. Some time later, GEICO added the driver to Westerfield's policy, doc. 20 at ¶ 35, which raised his insurance premium, *id.* at ¶ 36; *see* doc. 48-2 at 2–3 (displaying the additional driver on his policy's declarations page). Westerfield alleges that GEICO's conduct violated the terms of his insurance contract with it. *See* doc. 20 at ¶¶ 41–57, 78–114.

## II.    Procedural history

In December 2025, Westerfield sued GEICO in state court—individually, and on behalf of three putative classes. Doc. 1 at ¶ 3; doc. 20 at ¶ 70. He asserts the following state-law claims against GEICO: (i) breach of contract, doc. 20 at ¶¶ 78–90, (ii) breach of the covenant of good faith and fair dealing, *id.* at ¶¶ 91–100, (iii) unjust enrichment, *id.* at ¶¶ 101–08, and (iv) civil conspiracy, *id.* at ¶¶ 109–14. GEICO removed under CAFA, 28 U.S.C. § 1332(d). Doc. 1 at ¶¶ 9–31; *see also* docs. 19, 20. Westerfield then moved to remand, doc. 38, and GEICO moved to dismiss, doc. 45. The Court first addresses Westerfield's Motion to Remand.

## III.   Westerfield's Motion to Remand

### A.    Legal standard

CAFA confers the "district courts with 'original jurisdiction' to hear a 'class action'" when: (i) the class exceeds 100 members, (ii) "the parties are minimally diverse," and (iii) the

amount in controversy exceeds $5,000,000.  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. §§ 1332 (d)(2), (d)(5)(B)).  But "[w]hen a plaintiff contests the amount in controversy after removal, the [removing] party . . .  under [CAFA] must establish the amount in controversy by a preponderance of the evidence."  *Brunts v. Walmart, Inc.*, 68 F.4th 1091, 1094 (8th Cir. 2023) (quoting *Lizama v. Victoria's Secret Stores, LLC*, 36 F.4th 762, 765 (8th Cir. 2022)).

To do so, the "the removing party must show that a factfinder might legally conclude that the amount in controversy is greater than the threshold amount."  *Id.*  Unlike ordinary removal challenges, "no presumption against federal jurisdiction [exists] in class action cases."  *Id.*  "If the notice of removal plausibly alleges, and the evidence shows, that the case *might* be worth more than $5 million (excluding interest and costs), then it belongs in federal court."  *Id.* (cleaned up) (citing *Leflar v. Target Corp.*, 57 F.4th 600, 603 (8th Cir. 2023)).  Conversely, "if the notice of removal does not plausibly allege that the case meets each of the jurisdictional requirements . . . . [the removing party receives] a ticket back to state court."  *Leflar*, 57 F.4th at 603 (cleaned up).

The removing party meets its burden with "specific factual allegations . . . combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations."  *Brunts*, 68 F.4th at 1094 (citing *Waters v. Ferrara Candy Co.*, 873 F.3d 633, 636 (8th Cir. 2017)).  The removing party's burden "constitutes a pleading requirement, not a demand for proof."  *Id.* (citing *Hartis v. Chi. Title Ins. Co.*, 694 F.3d 935, 944 (8th Cir. 2012) (citation modified)).  But "the amount in controversy is not established by a preponderance of the evidence if a court must resort to conjecture, speculation, or star gazing."  *Id.* (cleaned up).  When a removing party meets its burden, "remand is only appropriate if the plaintiff can establish to a legal certainty that

3

the claim is for less than the requisite amount." *Dammann v. Progressive Direct Ins. Co.*, 856 F.3d 580, 584 (8th Cir. 2017) (citing *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009)).

**B.      Discussion**

In both its Notice of Removal and memorandum in opposition to remand, GEICO provides separate amount-in-controversy calculations, each exceeding CAFA's amount-in-controversy requirement.  Doc. 1 at ¶ 28; doc. 40 at 11–12.  For the reasons stated below, the Court finds that GEICO's Notice of Removal demonstrates "that a factfinder might legally conclude that the amount in controversy is greater than the threshold amount."  *Brunts*, 68 F.4th at 1094.

**1.      Notice of Removal's amount-in-controversy calculation**

In its Notice of Removal, GEICO states that "it is apparent that, as detailed in the accompanying declaration, the amount in controversy (as alleged here) exceeds $5,000,000." Doc. 1 at ¶ 26.  GEICO's "accompanying declaration" multiplied:

> (i) the number of putative Missouri class members identified through GEICO's preliminary investigation, by (ii) the number of states in which the relevant program is active (a conservative assumption given that the population of Missouri comprises less than 2% of the country's population and is dwarfed by the population of Florida, another state in which the subject program is active and in which a near-identical lawsuit is pending), by (iii) the amount that Mr. Westerfield was allegedly overcharged due to the 'wrongfully added' driver on his policy.

*Id.* at ¶ 28.  To put meat on that bone, GEICO multiplied Westerfield's "$2.20 purported [daily] overcharge," doc. 6-2 at ¶ 8, by "1,000 insureds who had GEICO policies issued to a residence in Missouri and had a driver identified by Risk Alert added to their policy . . . within the past five years," *id.* at ¶ 3, multiplied by 30 states where "the Risk Alert program is active," *id.* at ¶ 5, multiplied by 90 days or "half of GEICO's six-month policy period," *id.* at ¶ 7.

4

GEICO then took that sum—$5,940,000—and multiplied it by a 30% attorneys' fee.  *Id.* at ¶ 8.  That brings the total amount-in-controversy to $7,722,000.  *Id.*

But Westerfield argues that GEICO failed to carry its burden for four reasons.  Doc. 38 at 1.  First, "[GEICO] did not measure the class alleged in the Complaint."  *Id.*; *see also* doc. 39 at 5.  Second, GEICO treat[s] Missouri as an "'average' state without evidentiary support."  Doc. 38 at 2; doc. 39 at 6–7.  Third, GEICO "appl[ies] uniform rate and duration assumptions that, it concedes, 'vary significantly.'"  Doc. 38 at 2; *see also* doc. 39 at 7–8.  Fourth, Westerfield argues that "[a]ttorneys' fees cannot cure a defective damages model."  Doc. 38 at 2; *see also* doc. 39 at 8–9.  The Court addresses each argument in turn.

### a.   GEICO's alleged failure to measure the class stated in the complaint

Westerfield first argues that GEICO's amount-in-controversy calculation failed to measure the class alleged in his complaint.  Doc. 39 at 5.  Under CAFA, an amount-in-controversy calculation must aggregate "the claims of the individual members."  *Standard Fire*, 568 U.S. at 592 (citing 28 U.S.C. § 1332(d)(6)).  And "those 'class members' include 'persons' (named or unnamed) who fall within the definition of the *proposed* . . . class."  *Id.* (citing 28 U.S.C. § 1332(d)(1)(D)) (emphasis in original).  Westerfield states that the "alleged class is limited to insureds of the same GEICO underwriting entity that insured [him]."  Doc. 39 at 5 (citing doc. 20 at ¶ 70).  And Westerfield claims that GEICO's declaration treats all eight GEICO defendants as a collective unit.  *Id.*  So, because GEICO "began with the wrong population," Westerfield argues that its "jurisdictional showing fails as a matter of law."  *Id.*

GEICO responds that its "preliminary assessment" of the class definition was reasonable.  Doc. 40 at 4.  Westerfield's complaint, GEICO argues, broadly asserted claims "against *all* GEICO defendants."  *Id.*; *see* doc. 20.  And while Westerfield "now clarifies that he intended to

5

limit his nationwide class to only individuals insured by 'one or more of the GEICO entities who insured [Westerfield],' at no point in time does [Westerfield] specify the entity that insured him (a fact that should be known to [him])." Doc. 40 at 5; *see also* doc. 20 at ¶ 70; *id.* at 1 (suing Defendants collectively as "GEICO"). GEICO therefore argues that it was "entirely reasonable for [it] to assume that [Westerfield] intended to bring his nationwide claims against all Defendants, justifying GEICO's use of the '1,000 insureds' figure in its Notice of Removal.'" Doc. 40 at 5.

The Court agrees with GEICO. Under CAFA, jurisdiction is determined by "the operative complaint at the time of removal." *Hargis v. Access Cap. Funding, LLC*, 674 F.3d 783, 789–90 (8th Cir. 2012). Westerfield's complaint named eight GEICO subsidiaries as defendants and referred to them collectively as "GEICO." Doc. 20 at 1. The allegations against Defendants throughout his complaint are against "GEICO," not against a specific subsidiary of GEICO. *See* doc. 20 at ¶¶ 1–6, 29–69. In fact, Westerfield's complaint states that he "was a named insured under one *or more* automobile insurance policies issued by one *or more* GEICO-branded underwriting companies." *Id.* at ¶¶ 9, 29 (emphasis added). And his complaint limited each class to all insureds who "were insured by one *or more* of the GEICO entities who insured [Westerfield]." *Id.* at ¶ 70 (emphasis added). Thus, GEICO based its decision on a "reasonable deduction," rather than one based on "conjecture, speculation, or stargazing." *See Brunts*, 68 F.4th at 1094 (citation omitted). Westerfield may not attempt to recast or amend his complaint in a response brief to defeat jurisdiction under CAFA. *See Raskas v. Johnson & Johnson,* 719 F.3d 884, 888 n.1 (8th Cir. 2013) (citing *Hargis*, 674 F.3d at 789–90); *see also Thomas v. United Steelworkers Loc. 1938*, 743 F.3d 1134, 1140 (8th Cir. 2014).

### b.    GEICO's use of Missouri as a statistically "average state"

Westerfield then argues that GEICO's use of Missouri as a statically average state is "arbitrary and unsupported." Doc. 39 at 6. He also states that "[t]reating each state as an interchangeable unit ignores basic demographic reality—and could artificially bias the estimate upward by assigning Missouri's count to states that could not plausibly support it." *Id*.

The Court does not dispute that treating Missouri as a statistical average "could artificially bias the estimate upward." *Id.* But GEICO's second declaration clarified that it has found that "Missouri's population is disproportionately smaller than the other twenty-nine states in which GEICO's Risk Alert program is active." Doc. 40-1 at ¶ 3. GEICO argues that "[p]ut simply, Missouri's population represents approximately 1/35 of the total population of those 30 states." *Id.* While GEICO does not disclose the other 29 states in which its Risk Alert program is active, *see* doc. 6-2 at ¶ 2; *see also* doc. 40-1 at ¶ 2, the Court accepts its representation to the Court. The Court therefore finds that GEICO's decision to use Missouri as a statistical average was a "reasonable deduction," and not "conjecture, speculation, or stargazing." *See Brunts*, 68 F.4th at 1094 (citation omitted).

### c.    GEICO's rate assumption

Next, Westerfield argues that GEICO's "rate and duration assumptions confirm the unreliability of [its] estimate." Doc. 39 at 7. He argues that GEICO's first declaration stated that "the precise charge for an added driver will vary significantly." *Id.* (citing doc. 6-2 at ¶ 6). Therefore, he argues that GEICO was wrong to adopt "[his] six-day experience—about $2.20 per day—as a uniform nationwide rate." *Id.* (citing doc. 6-2 at ¶ 7).

But it's Westerfield's complaint that states that his claims "are typical of the other class member's claims." Doc. 20 at ¶ 75. Westerfield cannot fault GEICO for using his alleged

overcharge as the average for purposes of removal.  *See Hartis*, 694 F.3d at 945–46 (finding that a plaintiff's $12-average overcharge based on two incidents was "representative of the class" for determining the amount-in-controversy under CAFA).  And in its second declaration, GEICO asserts that upon further investigation the "average added expense of a youthful driver exceeds $2.72 per day."  Doc. 40-1 at ¶ 7.  The Court finds that GEICO's decision to use Westerfield's $2.20 alleged daily overcharge as a statistical average was a "reasonable deduction," and not "conjecture, speculation, or stargazing."  *See Brunts*, 68 F.4th at 1094 (citation omitted).

The Court notes that in April 2026, Westerfield filed supplemental evidence in support of remand.  Doc. 55; *see also* doc. 56.  Westerfield asserts that in a separate action involving "the same Risk Alert program at issue here," "the same declarant—Allison Hoskins—" made statements in a discovery response that undermine the reasonableness of GEICO's rate assumption.  Doc. 55 at 1–3.  But having reviewed the discovery response, doc. 57-1 at 2, the Court finds Hoskins's position to be consistent.

The plaintiff asked Hoskins to "[i]dentify the average and median premium increase amounts resulting from automatic driver additions (nationwide and by state)."  *Id.* at 2.  Hoskins in part responded that "[c]alculating *specific* premium increases for a *particular* policyholder would require a manual review of multiple highly voluminous data management systems, and that review must be repeated anew for each individual putative class member, which would be extraordinarily time-consuming, resource-intensive, and impractical."  *Id.* at 3 (emphasis added).  But "[e]ven if such a manual review were conducted, determining the amount a premium increased following the addition of a youthful driver may necessitate making assumptions about the cause of the premium change, which would result in inaccurate, speculative, or incomplete data."  *Id.*

Hoskins said as much in her declarations in this case.  Doc. 6-2 at ¶ 6 ("The precise charge for an added driver will vary significantly based on a host of factors including, among other things, age and driver experience, vehicle type, geographic location, and driver record."); doc. 40-1 at ¶ 7 (same).  That's why Hoskins reasonably used Westerfield's own alleged overcharge as a proxy for a typical class member's alleged overcharge.  *See* doc. 6-2 at ¶ 6. Westerfield's "demand for evidentiary certainty goes beyond what is required under CAFA." *See Waters v. Home Depot USA, Inc.,* 446 F. Supp. 3d 484, 492 (E.D. Mo. 2020); *see also Gallagher v. Santander Consumer USA Inc.*, No. 4:20-cv-01083-SEP, 2021 WL 2714101, at *3 (E.D. Mo. July 1, 2021) ("Defendant need not provide a formula or methodology for calculating the potential damages.") (cleaned up) (citing *Raskas*, 719 F.3d at 887)).

### d.      GEICO's duration assumption

GEICO's first declaration stated that the "length of time that each 'added driver' will remain active on each putative class member's account will similarly vary significantly."  Doc. 6-2 at ¶ 7.  Some drivers, "like Mr. Westerfield[,] would have removed the driver within a week, while others . . . may not have removed them at all."  *Id.*  Therefore, Westerfield argues that GEICO was wrong to adopt a 90-day estimate, about half of GEICO's six-month policy period, as the average duration.  Doc. 39 at 7 (stating that GEICO offered "no data, no sampling, and no explanation for why 'half a policy period' is a reasonable proxy for a nationwide class").  But GEICO's second declaration stated that based on "GEICO's preliminary investigation" out of a pool of 20,000 insured "more than half of those insured continued to have the newly added driver on their policy after 184 days."  Doc. 40-1 at 5.

The Court finds that on these facts, GEICO's 90-day estimate was a "reasonable deduction."  *See Brunts*, 68 F.4th at 1094 (citation omitted).  As noted above, Westerfield's

continued "demand for evidentiary certainty goes beyond what is required under CAFA." *See Waters*, 446 F. Supp. 3d at 492; *see also Gallagher*, 2021 WL 2714101, at *3.

### e. Attorneys' fees

Lastly, Westerfield asserts that GEICO incorrectly included a 30% attorneys' fee to the sum, because attorneys' fees "may be included only if they are potentially recoverable." Doc. 39 at 8 (citing *Leonard v. Enterprise Rent-A-Car*, 279 F.3d 967, 974 (11th Cir. 2002)). On this point, the Court agrees with Westerfield.

In Missouri, "[a]bsent statutory or contractual language authorizing an award of attorney's fees, Missouri courts follow the American Rule—namely, that the litigants bear the cost of their own attorney's fees." *Espinosa v. Baker*, 631 S.W.3d 631, 638 (Mo. Ct. App. 2021). Westerfield asserts three state-law claims in his complaint. Doc. 20 at ¶¶ 78–114. Though in his complaint, Westerfield sought an award of "reasonable attorney's fees and litigation costs and expenses," doc. 20 at 17, he concedes that he "pleads no contractual or statutory basis for fee-shifting," doc. 39 at 9.

The Court therefore does not consider the attorneys' fees in GEICO's amount-in-controversy calculation. *Cf. Faltermeier v. FCA US LLC*, 899 F.3d 617, 622 (8th Cir. 2018) (holding that attorneys' fees were properly included in an amount-in-controversy calculation under CAFA when the claim arose under a state statute that awards attorneys' fees to the prevailing party); *see also Waller v. Henkel Corp.*, No. 4:23-cv-00486-SEP, 2023 WL 3750417, at *2 (E.D. Mo. June 1, 2023). Still, even without the addition of 30% in attorneys' fees to the sum, GEICO's amount-in-controversy calculation totals $5,940,000. Doc. 6-2 at ¶ 8. The Court therefore finds that GEICO met its burden to "show that a factfinder might legally conclude that

10

the amount in controversy is greater than" $5,000,000.  *See Brunts*, 68 F.4th at 1094 (citation omitted).

### 2.    Westerfield has not shown to a legal certainty that the claims are less than CAFA's jurisdictional amount-in-controversy requirement

Because GEICO demonstrated that this case meets CAFA's jurisdictional amount-in-controversy requirement, this case must remain in federal court unless Westerfield "can establish to a legal certainty that the claim is for less than the requisite amount."  *Bell*, 557 F.3d at 956; *see also Raskas*, 719 F.3d at 888 ("Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.") (citation modified).  "Even if it is highly improbable that [Westerfield] will recover the amounts [GEICO has] put into controversy, this does not meet the legally impossible standard."  *Raskas*, 719 F.3d at 888.  Westerfield did not raise any argument as to his burden, *see generally* doc. 39; doc. 49, so the Court finds that he has not shown with legal certainty that the claims are less than CAFA's jurisdictional amount-in-controversy requirement.

Instead Westerfield requests that if "the Court determines that [GEICO's] jurisdictional showing could be resolved on the current record—[he] requests limited jurisdictional discovery tailored to the amount in controversy."  Doc. 39 at 10 (citing *Pudlowski v. St. Louis Rams, LLC*, 829 F.3d 963, 964–65 (8th Cir. 2016) (per curiam) ("Discovery is not limited to the merits of a case; where issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." (cleaned up)).

But in *Pudlowski*, the Eighth Circuit held that the district court abused its discretion by refusing to consider the removing party's postremoval affidavits establishing minimal diversity of citizenship under CAFA.  *Pudlowski*, 829 F.3d at 964–65; *see also Leflar*, 57 F.4th at 605.

11

Here, the Court reviewed GEICO's declarations as well as Westerfield's supplemental evidence, and, as explained in this Order, remains assured that they've met their burden under CAFA.

Westerfield also avers that the Eighth Circuit requires that the Court's inquiry "should operate on a 'level playing field.'"  Doc. 49 at 13 (quoting *Leflar*, 57 F.4th at 604).  And because "Defendants rely on internal analyses of their policy database to support their jurisdictional assumptions, yet . . . resist any discovery that would allow [Westerfield] to test those assertions," the "playing field is not level here," Westerfield claims.  *Id.*

But Westerfield's borrowed language from *Leflar* doesn't support his assertion.  In *Leflar*, "the district court applied the wrong legal standard" that it must resolve "all doubts about federal jurisdiction in favor of remand."  *Leflar*, 57 F.4th at 603.  The Eighth Circuit reiterated that the "same rule does not apply under [CAFA]."  *Id.* at 604 (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).  And because the district court's use of "the nonexistent presumption may well have played a pivotal role in the decision to remand," the *removing defendant* did not operate on a "level playing field."  *Id.*  Here, in finding that GEICO met its burden, the Court followed CAFA's directive that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee*, 574 U.S. at 89.

So, because "[t]his is not a case in which certain facts necessary to resolving the jurisdictional inquiry are either unknown or disputed," *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011), the Court, in its discretion, *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 713 (8th Cir. 2003), denies Westerfield's request for

12

limited discovery.  The Court therefore denies Westerfield's Motion to Remand, doc. 38, and turns to Defendants' Motion to Dismiss, doc. 45.

## IV.    GEICO's Motion to Dismiss

GEICO moves to dismiss this case for three reasons.  *See id.*  First, because a "nearly identical class action" pends in the Middle District of Florida, the Court should dismiss this case under the "first-to-file rule."  *Id.* at 1–2.  Second, the Court lacks personal jurisdiction over GEICO.  *Id.* at 2.  And third, Westerfield's complaint fails to state a claim upon which the Court can grant relief.  *Id.* at 2.  The Court first addresses GEICO's challenge to the Court's exercise of personal jurisdiction over it.

### A.    Personal jurisdiction

#### 1.    Standard

Federal Rule of Civil Procedure 12(b)(2) allows a party to move to dismiss a lawsuit for "lack of personal jurisdiction."  The existence of "[p]ersonal jurisdiction over a defendant represents the power of a court to enter 'a valid judgment imposing a personal obligation or duty in favor of the plaintiff.'"  *Viasystems*, 646 F.3d at 592–93 (citing *Kulko v. Superior Ct.*, 436 U.S. 84, 91 (1978)).  When a defendant contests personal jurisdiction, a plaintiff bears the burden at the pleading stage to "make a prima facie showing that personal jurisdiction exists, which is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state."  *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (citation modified); *see also Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 951 (8th Cir. 2022).

"Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting

13

or opposing the motion." *K-V Pharm. Co.*, 648 F.3d at 592 (citation modified).  At this stage, the Court views all the evidence in the light most favorable to the plaintiff and will not dismiss the case if the evidence, when viewed in this light, "is sufficient to support a conclusion that the exercise of personal jurisdiction over [the defendant] is proper." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (first citing *Radaszewski ex rel. Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309–10 (8th Cir. 1992); and then citing Fed. R. Civ. P. 56(a)).

Where, as here, the applicable federal statute does not authorize nationwide personal jurisdiction, "the existence of personal jurisdiction depends on the long-arm statute of the forum state and the federal Due Process Clause." *Bros. & Sisters in Christ*, 42 F.4th at 951 (first citing *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021); and then citing Fed. R. Civ. P. 4(k)(1)(A)). "Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact business, make a contract, or commit a tort within the state." *Viasystems*, 646 F.3d at 593 (citing Mo. Rev. Stat. § 506.500.1).  "These individual categories are construed broadly, such that if a defendant commits one of the acts specified in the long-arm statute, the statute will be interpreted 'to provide for jurisdiction, within the specific categories enumerated in the statute[], to the full extent permitted by the [D]ue [P]rocess [C]lause.'" *Id.* (alterations in original) (quoting *State ex rel. Metal Serv. Ctr. of Ga., Inc. v. Gaertner*, 677 S.W.2d 325, 327 (Mo. 1984)).

However, "[e]ven if personal jurisdiction over a defendant is authorized by the forum state's long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause." *Id.* at 594 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  Thus, if the Court concludes that the cited actions fail to "surmount the due-

14

process threshold," the Court need not decide whether the activities fall within the bounds of Missouri's long-arm statute. *See id*.

### 2.    Discussion

The Court "turn[s] to whether exercising jurisdiction over [GEICO] comports with the Due Process Clause." *Bros. & Sisters in Christ*, 42 F.4th at 951. "Under this standard, '[p]ersonal jurisdiction exists only if the contacts between the defendant and the forum state are sufficient to establish that the defendant has purposefully availed himself of the benefits and protections of the forum state.'" *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quoting *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006)); *see also Kaliannan*, 2 F.4th at 733 ("[C]ritical to due process analysis . . . is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985))).

"The relevant conduct and connections for the due process analysis depend on whether personal jurisdiction is alleged to be general or specific." *Bros. & Sisters in Christ*, 42 F.4th at 952 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 357–59 (2021)). "General jurisdiction exists where a defendant is essentially at home in the forum state, whereas specific jurisdiction covers defendants less intimately connected with a State, but only as to a narrower class of claims, namely those that arise out of or relate to the defendant's contacts with the forum." *Id.* (cleaned up) (quoting *Ford Motor Co.*, 592 U.S. 358–60).

As the Supreme Court reiterated, these categories apply in the absence of consent to suit in the forum state, and consent remains viable to establish personal jurisdiction. *See Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 138–39 (2023). As Westerfield does not contend that

15

Defendants consented to suit in Missouri—by statute or otherwise—the Court need not address this issue further.

Westerfield's complaint also states that each Defendant is a Nebraska corporation with its principal place of business in either Maryland or Nebraska. Doc. 20 at ¶¶ 10–19. And in his memorandum in opposition, Westerfield asserts only that the "Court has specific personal jurisdiction over [GEICO]." Doc. 52 at 3. The Court finds that Westerfield has not met, or attempted to meet, his burden to establish general jurisdiction over GEICO. The Court thus examines whether it has specific jurisdiction over GEICO.

### a.       Specific jurisdiction

GEICO argues that Westerfield "failed to plead—and in fact, is *unable* to plead—facts sufficient to sustain . . . specific jurisdiction" for two reasons. Doc. 46 at 10. First, Missouri's long-arm statute doesn't authorize personal jurisdiction over this suit. *Id.* at 10–12. Second, this suit does not arise out of or relate to any of GEICO's contacts with Missouri. *Id.* For the following reasons, the Court disagrees.

### i.       Due Process

A court's specific jurisdiction arises out of a relationship among the defendant, the forum, and the litigation. *Daimler AG v. Bauman*, 571 U.S. 117, 132–33 (2014). Specific jurisdiction requires the suit to "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017) (cleaned up); *see also Whaley v. Esebag*, 946 F.3d 447, 451 (8th Cir. 2020) (noting that "the relationship must arise out of contacts that the 'defendant himself' created with the forum State" (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014))).

16

The Eighth Circuit has identified five factors for courts to consider in assessing whether there are minimum contacts sufficient to confer specific jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *K-V Pharm. Co.*, 648 F.3d at 592 (cleaned up) (quoting *Arden*, 614 F.3d at 794); *see also Bros. & Sisters in Christ*, 42 F.4th at 952. The first three factors are "primary factors," though the Eighth Circuit considers "all of the factors and the totality of the circumstances in deciding whether personal jurisdiction exists." *K-V. Pharm. Co.*, 648 F.3d at 592–93.

Turning to the first, second, and third factors, Westerfield claims after he moved to Missouri, GEICO renewed and continuously administered his policy while he lived there. Doc. 52 at 4. He states that he moved to Missouri on April 15, 2024. *Id.* (citing doc. 52-1 at ¶ 2). Then in August 2024, "GEICO renewed his policy." *Id.*; *see also* doc. 52-1 at ¶ 6. And Defendants only sent him the Risk Alert email notice on October 2, 2024. Doc. 52 at 4; *see* doc. 48-1 at 2 (the Risk Alert email notice). Therefore, Westerfield argues, "GEICO did not merely insure a Kansas risk that happened to move [to Missouri]." Doc. 52 at 6. Instead, he asserts that his "claims arise out of GEICO's continuation, renewal, administration, and modification of [his] insurance policy while [he] was a Missouri resident." Doc. 52-1 at ¶ 13.

Defendants respond that "the insurance agreement at issue, by its terms, is a Kansas insurance agreement intended to insure persons and property located within the State of Kansas." Doc. 54 at 5–6. And though Westerfield moved to Missouri and renewed his policy while in Missouri, "the contract and correspondence at issue plainly establish [GEICO's] lack of knowledge of Mr. Westerfield's alleged move to Missouri[.]" *Id.* at 8.

17

The Court agrees with Westerfield.  "Personal jurisdiction exists only if the contacts between the defendant and the forum state are sufficient to establish that the defendant has purposefully availed himself of the benefits and protections of the forum state."  *Arden*, 614 F.3d at 794 (cleaned up) (quoting *Woodcock*, 444 F.3d at 955); *see also Kaliannan*, 2 F.4th at 733 ("Critical to due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." (cleaned up) (quoting *Burger King Corp.*, 471 U.S. at 474)).  This "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'"  *Burger King Corp.*, 471 U.S. at 475 (citations omitted); *see Ford Motor Co.*, 592 U.S. at 359 ("The contacts must be the defendant's own choice and not random, isolated, or fortuitous." (cleaned up)).

The purposeful-availment requirement therefore ensures that a nonresident corporation has "clear notice that it is subject to suit" in Missouri.  *See World-Wide*, 444 U.S. at 297.  In *Ford*, the Supreme Court provided two examples where a defendant purposely avails itself of the forum state by:  (i) "entering a contractual relationship centered there" or (ii) "exploiting a market."  *Ford Motor Co.*, 592 U.S. at 359 (cleaned up).  For the following reasons, the Court finds that Westerfield met his minimal evidentiary burden to show that GEICO purposefully availed itself of the "benefits and protections of" Missouri law.  *Arden*, 614 F.3d at 794.

GEICO is correct that some of Westerfeld's evidence carefully elides whether it deliberately entered a contractual relationship with Westerfield in Missouri.  Westerfield states he "submitted a permanent-change-of-address request with the United States Postal Service changing [his] address to Missouri," doc. 52-1 at ¶ 3, and that Defendants "communicated with [him]" and "accepted premium payments" while he resided in Missouri, *id.* at ¶¶ 4– 5; *see also*

18

*id.* at ¶ 11 ("GEICO's actions described above occurred *while I was residing in Missouri* and *were directed to me* in Missouri." (emphasis added)).  He also states that he interacted with GEICO's website while in Missouri.  *Id.* at ¶ 12.  But Westerfield's declaration carefully elides whether:  (i) GEICO sent any correspondence directly to Westerfield's Missouri address or (ii) he ever notified GEICO of his move to Missouri.  *See id.*

And in his declaration, Westerfield states that some of the communications from GEICO while he resided in Missouri "were those related to [his] policy with GEICO Advantage with a coverage period of August 12, 2024 through February 12, 2025."  Doc. 52-1 at ¶ 4.  But the referenced declarations page of his policy with GEICO Advantage displays Westerfield's Kansas address and the location of the insured vehicles in Kansas.  Doc. 48-2 at 2.  Westerfield also provides evidence that Defendants sent the risk-alert notice via email.  *See* doc. 48-1 at 2.  But that's not all the evidence that Westerfield provides.

Westerfield also attached a copy of GEICO's Kansas Family Automobile Insurance Policy.  The policy states that it "applies only to accidents, occurrences[,] or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof."  Doc. 52-4 at 15.  The Eighth Circuit has found that an "insurance policy's territory-of-coverage clause establishes sufficient contacts between [an insurer] and [the forum state] to satisfy the strictures of the Due Process Clause." *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 791 (8th Cir. 2005).  GEICO "presumably offered a broad 'coverage territory' in order to make its policies more marketable and profitable."  *Id.*  "Thus, not only was it foreseeable that [GEICO] might be sued in [Missouri] in connection with a dispute relating to its policy, but the 'expectation of being haled into court in a

19

foreign state is an express feature of its policy." *Id.*  That Kansas and Missouri share a border makes this even more likely.

Westerfield also showed that GEICO purposefully availed itself of the "benefits and protections of" Missouri law, *Arden*, 614 F.3d at 794, by presenting evidence that GEICO exploits Missouri's market, *Ford Motor Co.*, 592 U.S. at 359.  As Westerfield notes, doc. 52 at 6–7, GEICO's evidence admits as much.  GEICO identified "over 1,000 insureds who had GEICO policies issued to a resident in Missouri."  Doc. 6-2 at ¶ 3.  And GEICO's "Risk Alert program is currently active . . . [in] Missouri."  *Id.* at ¶ 4.  Further, GEICO states that it "utilizes third-party data that its vendor obtains directly from each state's respective Department of Motor Vehicles . . . ."—including Missouri.  *Id.* at ¶¶ 2–3.

The Court notes as well that each Defendant in this case registered to do business in Missouri.  *See* National Association of Insurance Commissioners, https://external-lookup-web.prod.naic.org/ (last accessed July 25, 2026) (enter "Missouri" in the "Jurisdiction" box and "Company" in the "Search Type" box, then enter "GEICO" in the "Company Name" box and then click on "Search").  The Court therefore finds that the first three factors weigh in favor of personal jurisdiction over GEICO.

The fourth factor requires the Court to consider Missouri's interest in providing a forum to its residents.  *K-V Pharm. Co.*, 648 F.3d at 592.  Westerfield now resides in Missouri.  Doc. 52-1 at ¶ 2.  Missouri thus has an interest in providing a forum for Westerfield.  *See Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997).  The fifth factor requires the Court to consider the convenience or inconvenience to the parties.  *K-V Pharm. Co.*, 648 F.3d at 592.  Westerfield resides in Missouri.  Doc. 20 at ¶ 3.  And while Defendants are separate Nebraskan corporations with principal places of business in Maryland or Nebraska, doc. 20 at ¶¶ 10–19, they are also

20

nationwide insurance companies that are registered to do business in Missouri.  Missouri is therefore a convenient forum for the parties.  In sum, looking at "all of the factors" and considering "the totality of the circumstances," the Court concludes that exercising personal jurisdiction over GEICO comports with due process.  *Arden*, 614 F.3d at 794.  The Court therefore turns to address whether GEICO's actions are within the bounds of Missouri's long-arm statute.  *See Viasystems*, 646 F.3d at 589.

### ii.        Missouri's long-arm statute

"Missouri's long-arm statute authorizes personal jurisdiction over defendants who, *inter alia*, transact business, make a contract, or commit a tort within the state."  *Id.* (citing Mo. Rev. Stat. § 506.500.1).  "These individual categories are construed broadly, such that if [GEICO] commits one of the acts specified in the long-arm statute, the statute will be interpreted 'to provide for jurisdiction, within the specific categories enumerated in the statute[], to the full extent permitted by the [D]ue [P]rocess [C]lause.'"  *Id.* (quoting *Gaertner*, 677 S.W.2d at 327).  GEICO committed at least two acts specified in the long-arm statute:  it (i) "transact[ed] . . . . business within [Missouri]" and (ii) allegedly "commission[ed] . . . a tortious act with within [Missouri]."  Mo. Rev. Stat. § 506.500.1(1), (3); *see* doc. 20; doc. 6-2 at ¶¶ 3–8; doc. 40-1 at ¶¶ 3–8.  The Court finds that Missouri's long-arm statute authorizes personal jurisdiction over GEICO.  *See* Mo. Rev. Stat. § 506.500.1.  The Court turns to address GEICO's argument that this case should be dismissed or transferred to the Middle District of Florida under the first-to-file rule.

### B.        First to file

"[T]he first-filed rule gives priority, for the purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes

21

jurisdiction." *Yancey v. State Farm Mut. Auto. Ins. Co.*, No. 4:23-cv-00377-SRC, 2023 WL 5019769, at *2 (E.D. Mo. Aug. 7, 2023) (citing *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)); *see Bunge-SCF Grain, LLC v. Webster*, No. 4:23-cv-00734-SRC, 2023 WL 9023168, at *2 (E.D. Mo. Dec. 29, 2023).  "Parallel litigation exists when 'substantially the same parties litigate substantially the same issues in different forums.'" *Yancey*, 2023 WL 5019769, at *2 (citing *Lexington Ins. Co. v. Integrity Land Title Co.*, 721 F.3d 958, 968 (8th Cir. 2013)).

"The rule is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice."  *Id.* (citation modified) (quoting *U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488 (8th Cir. 1990)).  "The prevailing standard is that 'in the absence of compelling circumstances the first-filed rule should apply.'"  *Bunge-SCF Grain*, 2023 WL 9023168, at *2 (quoting *Nw. Airlines*, 989 F.2d at 1005).

"[C]ourts look at three factors when deciding to apply the first-filed rule:  (1) timing of events; (2) the similarity of the parties involved; and (3) the similarity of the claim or issues at stake."  *Brinker v. Kraft Heinz Foods Co.*, No. 4:24-cv-704-MTS, 2024 WL 3638243, at *2 (E.D. Mo. Aug. 1, 2024).  GEICO argues that each factor favors applying the first-to-file rule.  Doc. 46 at 2.  For the following reasons, the Court agrees.

First, the parties don't dispute that *Kane* v. *Geico Casualty Company*, No. 6:25-cv-00532-JSS-LHP (M.D. Fla. 2025) was filed several months before this action.  Doc. 46 at 6; *see* doc. 52 at 2–3.  Further, the parties are substantially similar.  *See Yancey*, 2023 WL 5019769, at *2; *Brinker*, 2024 WL 3638243, at *2.  Like in *Kane*, GEICO Casualty is a party.  *See* doc. 20 at 1; *id.* at ¶ 15.  And Westerfield's complaint treats each Defendant as part of a collective unit that

22

uses the same Risk Alert program against its policyholders. Doc. 20 at ¶¶ 20–23; *see id.* at 1 (defining Defendants collectively as "GEICO").

Both cases also raise substantially similar claims. *See Yancey*, 2023 WL 5019769, at *2; *Brinker*, 2024 WL 3638243, at *2. *Compare* doc. 46-4 at ¶¶ 32–54 (raising claims for breach of contract, breach of good faith and fair dealing, and unjust enrichment claims), *with* doc. 20 at ¶¶ 78–108 (raising claims for breach of contract, breach of good faith and fair dealing, and unjust enrichment). Finally, the putative classes in both are substantially similar. *Compare* doc. 46-4 at ¶ 25, *with* doc. 20 at ¶ 70. The Court also notes that the same counsel represents plaintiffs in both cases. So because no compelling circumstances exist here, the Court transfers this case under the first-filed rule. *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."); *see also Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*, 212 F. Supp. 2d 1101, 1104–05 (E.D. Mo. 2002) (transferring later-filed case under § 1404(a)).

## V.      Conclusion

Accordingly, the Court denies Westerfield's [38] motion to remand and grants GEICO's [45] request to transfer this case under the first-to-file rule. The Court directs the Clerk of Court to transfer this case in its entirety to the United States District Court for the Middle District of Florida. *See* 28 U.S.C. § 1404(a).

So ordered this 27th day of July 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE